THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MALCOLM BERNARD ELAM, Defendant-Appellant.

Fourth District   No. 4—86—0680

Opinion filed June 4, 1987.

Daniel D. Yuhas and Leia M. Norton, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On September 11, 1986, following a jury trial in the circuit court of Champaign County, defendant, Malcolm Elam, was convicted of

residential burglary and attempt (aggravated criminal sexual assault). (Ill. Rev. Stat. 1985, ch. 38, pars. 19—3, 8—4.) He was subsequently sentenced to concurrent terms of 10 years' imprisonment. On appeal, defendant contends (1) he was denied effective assistance of counsel; (2) the trial court erred in denying defendant's motion to proceed *pro se* at closing argument; and (3) the trial court considered improper aggravating factors in sentencing. We affirm.

The complainant, an 83-year-old woman, testified at trial (1) on April 17, 1986, she was awakened by the noise of a man entering her bedroom through a window; (2) the man disrobed and got into bed with her; (3) she attempted to escape but was held down and sexually molested by the man; (4) the man eventually got out of bed and took a bottle of liquor from the bedroom closet, drank some liquor, and returned the bottle to the closet; (5) she was then able to reach and push her "lifeline" button, a small remote control device which had been installed so that she could use it in medical emergencies to contact a hospital; (6) the telephone began to ring in response to the "lifeline" call; and (7) the man released the victim and fled. The complainant testified that she was unable to identify the man, because she had removed her hearing aid and glasses prior to going to bed. She also stated that the incident on April 17 was the third such incident, and she believed the same man was in her home on all three occasions. She indicated that on prior occasions the intruder caressed her. She said the man never hit or threatened her, but she was, nevertheless, too frightened to tell anyone about the prior incidents. She said that she did not consent to any of the activities which occurred, but she did not tell the man he could not come in the house or that he could not touch her. The parties stipulated that the fingerprints obtained from the liquor bottle matched defendant's.

Defendant testified in his own behalf. He stated (1) he lived across the street from complainant and had been at her house several times beginning in the late summer of 1985; (2) he and the complainant were having an affair, and the complainant voluntarily participated in the sexual relationship; (3) she always, initially, resisted his advances before becoming a copartner; and (4) she left money in her purse to compensate defendant for his services.

■ The Supreme Court has determined that, in order to establish ineffective assistance of counsel so as to require reversal of a conviction, the defendant must show (1) counsel's performance was deficient in that he made errors so serious that counsel was not functioning as "counsel" guaranteed by the sixth amendment, and (2) that the deficient performance prejudiced the defense and deprived defendant of a

fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The court further said that the defendant must show that counsel's representation fell below an objective standard of reasonableness.

Defendant argues he was denied the effective assistance of counsel because of statements his trial attorney made during closing argument and counsel's failure to argue the defense of consent. The testimony elicited by the defense at trial from both the complainant, on cross-examination, and the defendant related to the issue of consent. However, defense counsel did not offer a jury instruction defining consent and argued in closing only that defendant did not possess the requisite intent to commit the alleged offenses. Counsel stated:

> "The State has to prove beyond a reasonable doubt that when he entered this building, he did so with the intent to commit that crime. By this account and his perception it wasn't a crime *** he was going in to do. Unless you totally believe that he's making all this up, his perception was that this was a part of their relationship that he was going in *** to provide her with company in exchange for this money that she had been leaving for him in the purse.
>
> Now, that doesn't mean that that is the objective reality of it, and I'm not arguing that to you at all. She is probably the best witness as to what the cold hard facts of the whole thing of that stands.
>
> * * *
>
> There is no question about the acts he did and the things that he did. The question that you're going to be wrestling with is what was his intent? You will see that all through the issues instructions, and the definitions, is a question of intent, and what were his intentions? Because with the second point they have to prove with regard to the charge of intent, was that the defendant did so, that is did the acts, with the intent to commit the offense of aggravated criminal sexual assault. That those were his intentions."

Finally, counsel argued that defendant was not guilty of a crime, but that he had a "distorted perception of reality." Counsel stated that if the jury found:

> "[defendant's] perceptions, as warped, as twisted, as wrong as they might be, created in his mind a situation where this was not an attempt to commit a crime, then the appropriate verdict is, with respect to criminal consequences, not guilty."

Defendant maintains that his counsel's failure to argue the de-

fense of consent was unreasonable, and his argument that defendant's testimony was not "objective reality" and that the complainant was "probably the best witness," virtually conceded defendant's guilt. Moreover, he argues that counsel's insinuation that defendant was mentally ill was improper and prejudicial since defendant did not plead guilty but mentally ill or not guilty by reason of insanity.

Defendant notes that in *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, the court recognized that the court in *Strickland* found some circumstances to be so likely to prejudice the accused that such prejudice need not be shown but would be presumed. In *Hattery*, the court reversed the defendant's conviction for murder and remanded for a new trial. The defense attorney in that case admitted in his opening statement that defendant killed the victims but argued that he did so because he was compelled to do so to save the lives of his family. The court found that counsel's statements, in light of defendant's plea of not guilty, deprived the defendant of the right to have the issue of his guilt or innocence presented to the jury as an adversarial issue.

Such is not the case here, however, where defendant admitted that the entry of the residence and the sexual acts took place as alleged. However, the residential burglary charge required proof that he entered with intent to commit theft or a felony and the attempt charge required proof that he intended to commit an aggravated criminal sexual assault. If defendant had a perception, however unreasonable, that he had consent to enter and consent to perform the sexual acts, he would not have been guilty of the offenses charged. Counsel was well within the bounds of reason in choosing to argue that defendant's misperception negated intent rather than attempting to persuade the jury to believe the bizarre story of his client rather than the testimony of the victim. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.

The question of consent is, as defendant points out, a matter of credibility for the trier of fact who heard the evidence and saw the demeanor of the witnesses. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667.) However, after defendant's long and detached account of his perceived relationship with the complainant, counsel could have concluded that the jury was more likely to have a reasonable doubt as to defendant's lack of intent to commit acts than as to whether he actually had consent to do what he did. Trial strategy must not be considered with the benefit of hindsight, but rather it

must be viewed from counsel's perspective at the time. *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.

■ Moreover, the record indicates counsel actively participated in all stages of the trial. He argued for a psychiatric examination of defendant and for a fitness hearing, effectively argued against the State's motion *in limine*, and extensively cross-examined the complaining witness. We find no evidence to overcome the presumption of competency.

Defendant's second contention is that the trial court erred in denying his motion to proceed *pro se* at the closing argument. The request was made after the jury instruction conference, and the trial court summarily denied the request. Defendant recognizes that whether to permit a defendant to abandon counsel in the middle of trial and to permit him to proceed *pro se* is a matter of discretion with the trial court. He contends that the trial court abused that discretion here, because it did not inquire of defendant as to his reasons for wishing to change counsel. Courts of other jurisdictions have indicated that the decision as to whether to permit a defendant to proceed *pro se* in midtrial should be made on the basis of (1) the reason for the request, (2) the quality of existing counsel's representation, and (3) the defendant's propensity to discharge counsel. *United States v. Catino* (2d. Cir. 1968), 403 F.2d 491; *United States ex rel. Maldonado v. Denno* (2d Cir. 1965), 348 F.2d 12.

■ However, we do not determine that the trial court must necessarily ask the defendant for his reasons for wishing to proceed *pro se*. The factors to balance are the legitimate interests of the defendant in proceeding *pro se* and the potential disruption of the proceedings. (*People v. Bell* (1977), 49 Ill. App. 3d 140, 363 N.E.2d 1202.) Here, the trial court had observed defendant throughout the trial and had previously had the benefit of a psychiatric report which found defendant fit to stand trial but possessed a "mixed character disorder." The court had also heard statements of defense counsel concerning the difficulty in obtaining the confidence of the defendant. The trial court had sufficient information to balance the interests of the defendant against the likely damage to orderly conclusion of the trial. The court did not abuse its discretion in denying defendant's request to proceed *pro se*.

■ Finally, defendant maintains the trial court erred in considering the age of the victim as an aggravating factor in sentencing defendant. We find defendant's contention to be without merit. The trial court, prior to pronouncing sentence, mentioned factors in miti-

gation and aggravation. In doing so, the court noted the effect the incident had on the victim as well as the victim's entire family. The court's mention of the victim's age was merely an articulation of the particular facts of the offense and not a recital of an aggravating factor. Moreover, the aggravating factor became effective if the victim was at least 60 years of age. The fact that the victim's age exceeded that age by 23 years made her age a proper aggravating factor. We find no abuse of discretion by the court in sentencing.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

SPITZ, P.J., and LUND, J., concur.