THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GILL, Defendant-Appellant.

First District (2nd Division) No. 86—1144

Opinion filed May 10, 1988.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.

Paul P. Biebel, Jr., Public Defender, of Chicago (Janet R. Stewart and James N. Perlman, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Sara Dillery Hynes, Special Assistant State's Attorney, and Kenneth T. McCurry, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

A jury convicted defendant of armed robbery and attempted murder. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1, 18—2(a).) On appeal, we are asked to determine whether the State proved him guilty beyond a reasonable doubt; a bullet found in his possession was improperly admitted into evidence; he was denied effective assistance of counsel; his sentence to life imprisonment was imposed pursuant to an unconstitutional statute; and his previous felony convictions were proved beyond a reasonable doubt.

At 10 p.m. on March 6, 1985, defendant approached the front counter of a fast-food restaurant at Madison and Pulaski in Chicago and asked the cashier, Alice Campbell, for two pieces of chicken. As she reached for the cash he placed on the counter, defendant put his hand over it and told her to transfer money from the cash registers into a paper bag and not to alert the manager. He opened his black leather jacket to reveal a gun.

The restaurant manager, Greg Davis, saw Campbell emptying the registers and asked what she was doing, to which defendant replied, "I am sticking up the place." Defendant grabbed the bag of money from Campbell's hand and ran out of the restaurant, pursued by Davis.

Davis testified he chased defendant south on Pulaski until defendant stopped, turned and shot at him. As defendant proceeded west on Monroe, Davis flagged down a passing patrol car, and joined Officer Joseph Lombardi in the car. Lombardi and Davis drove a few blocks to Wilcox, where Davis saw defendant walking down the street and identified him for Lombardi.

Lombardi left his vehicle and exchanged fire with defendant.

Defendant then ran into a gangway on the south side of Wilcox, followed by Lombardi; defendant and Lombardi again shot at each other in the gangway. At an alley between Wilcox and Adams, Lombardi stopped to reload his weapon and reported defendant's flight on his radio.

In response to a radio call, Officer Michael Mullen and his two partners drove their squad car into an alley between Adams and Jackson. Defendant "dashed" in front of the squad car and was attempting to shake off a black vinyl or "leather-like" jacket as he ran. All three officers left the car and gave chase, following defendant into the backyard of a building on Jackson. There, two of the officers shot at defendant as he turned on them in a crouched position. Defendant leaped a chain link fence surrounding the yard, proceeded south to Jackson, ran across the thoroughfare and into a gangway at 4037 W. Jackson. When Mullen entered the gangway, he found defendant pounding on its sealed back door; defendant then lay face down on the ground. In an immediate search of the chase route, officers recovered a black leather jacket containing $80 in cash, but no gun. In defendant's pants' pocket, Mullen discovered a live, .357 caliber bullet and $56.

Defendant was arrested and charged with attempted murder, armed violence and armed robbery. Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1, 18—2(a), 33A—2.

At trial, the State presented the testimony of Campbell, Davis, a forensic chemist and officers involved in the incident. Defendant did not testify.

The trial returned a guilty verdict as first noted. Following a hearing determining his status as a habitual offender under the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 et seq.), defendant was sentenced to life imprisonment. He appeals.

I

■ Defendant initially contends the State adduced insufficient evidence that he was armed during the events in question and therefore failed to prove him guilty of armed robbery and attempted murder beyond a reasonable doubt.

In particular, defendant observes that an armed robbery conviction requires a showing that defendant committed robbery while armed or carrying a dangerous weapon (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and that the indictment charged him with attempted murder in that he "attempted to kill [Davis and Lombardi] by shooting at [them] with a gun." Whether there was sufficient evidence to

prove these charges was for the jury and its verdict will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to defendant's guilt remains. *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Helton* (1987), 153 Ill. App. 3d 726, 734, 506 N.E.2d 307; *People v. Calhoun* (1987), 152 Ill. App. 3d 206, 209, 504 N.E.2d 266.

Here, Campbell saw a gun handle protruding from an inside pocket of defendant's jacket in the restaurant. Davis swore defendant shot at him from a distance of five yards and that he saw the gun in defendant's hand as the shots were fired. Lombardi stated that he saw a gun in defendant's hand from 10 feet away on Wilcox and fired at him twice and defendant shot two more times at him in a gangway from a distance of 20 to 25 feet. Mullen averred he found a bullet in defendant's pants pocket. The forensic chemist testified that defendant's right palm bore traces of gunshot residue. From the foregoing it is clear that the jury had more than substantial bases upon which to arrive at its guilty verdict beyond a reasonable doubt.

Defendant focuses, however, on inconsistencies in the evidence: Campbell admitted she saw only the handle of the gun, which she remembered as five inches long and "brown and beige" in color; Davis asserted the gun he saw in defendant's hand was silver; Lombardi described the barrel as "blue-steel." As to the number of shots exchanged with defendant, Lombardi admitted his firearms use report stated defendant fired at him three times in the gangway, although he asserted at trial that defendant fired there only twice. Davis stated he never saw the gun in the restaurant although Lombardi testified that Davis said he did. No gun was found in the search following defendant's arrest, although the black leather jacket was located.

Where evidence is conflicting, it is the prerogative of the jury to ascertain the truth; a reviewing court may not substitute a different conclusion on questions regarding the credibility of witnesses. (*People v. Yates*, 98 Ill. 2d at 524; *People v. Helton*, 153 Ill. App. 3d at 734.) The inconsistencies here are minor and render the evidence neither so improbable nor so unsatisfactory as to justify overturning that verdict.

## II

■ Defendant next insists the court erred in admitting the bullet retrieved from his pocket into evidence where the State failed to lay a proper foundation. Defendant notes that Mullen testified he found the bullet in a pocket of defendant's pants, but another detective stated

that after defendant's arrest, other officers told him a bullet was found in a pocket of the black leather jacket.

The State responds that defendant waived this issue by failing to register timely objections to the evidence during and after trial. Defense counsel did move to exclude the bullet and objected to its admission into evidence; counsel's argument before the court, however, was limited to the prejudicial effect of introducing the bullet where the State failed to produce the weapon itself. Failure to object to a lack of foundation during trial and by post-trial motion waives the issue for consideration on appeal. *People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091; *People v. Bollman* (1987), 163 Ill. App. 3d 621, 637, 516 N.E.2d 870.

Furthermore, if any error exists, it is harmless; the evidence of defendant's guilt is overwhelming, even without the incriminating inference raised by the presence of a bullet on defendant's person. *People v. Johnson* (1986), 148 Ill. App. 3d 163, 170, 498 N.E.2d 816.

## III

■ Defendant also urges he was denied effective assistance of counsel when his attorney conceded, during closing argument, defendant's guilt of robbery.

An attorney provides ineffective assistance when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) there is a reasonable probability that, absent the attorney's unprofessional errors, the results of the proceeding would be different. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068.) Underpinning this test is the fundamental concern of whether counsel's conduct so undermines the adversarial process that the trial cannot be relied upon as producing a just result. *Strickland v. Washington*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

Defendant cites *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1038, 92 L. Ed. 2d 727, 106 S. Ct. 3314, where defendant's attorney admitted, in opening and closing argument, defendant's guilt of the charge of murder, although defendant pleaded not guilty and maintained his innocence on the stand. The court reversed defendant's conviction for murder, finding that the prosecution's case eluded "meaningful adversarial testing" because the attorney's strategy prevented the question of defendant's guilt or innocence from being submitted to the trier of fact. Indicating that its holding was limited to the facts before it, the court ruled that an attorney may not concede his client's guilt in the hope of obtaining

a more lenient sentence where a plea of not guilty has been entered, unless the record adequately shows defendant knowingly and intelligently consented to the strategy. *People v. Hattery*, 109 Ill. 2d at 465.

In *People v. Woods* (1986), 151 Ill. App. 3d 687, 502 N.E.2d 1103, on which defendant also relies, defendant was charged with theft and burglary. The defense attorney conceded defendant's guilt of theft, despite his testimony to the contrary. The court reversed defendant's convictions, ruling that under the particular facts of the case, admission of theft was also tantamount to admission of burglary. Defendant was thus denied the opportunity to subject the State's case to adversarial testing. *People v. Woods*, 151 Ill. App. 3d at 694.

The case at bar is distinguishable from both *Woods* and *Hattery*. Here, counsel conceded defendant's guilt, not to the crimes charged, but rather to a lesser included offense, arguably in an attempt to remove defendant from the ambit of a life sentence as a habitual offender, and, as defendant did not testify at trial, cast no shadow on defendant's credibility. Furthermore, counsel vigorously cross-examined the State's witnesses as to whether defendant possessed a gun and moved the court to permit additional discovery; suppress evidence; sever the trials of certain counts; appoint an expert witness to testify on defendant's behalf; and order a new trial. The record thus demonstrates that defendant's attorney not only acted reasonably, but also tenaciously pursued his client's interests and thoroughly probed the State's case for weaknesses. See *People v. Elam* (1987), 156 Ill. App. 3d 685, 690, 509 N.E.2d 698.

This court also recognizes the legitimacy of admitting guilt to less than all counts in a multicount indictment or less than all elements of the crime(s) charged where evidence of defendant's guilt is overwhelming and counsel's strategy is to win a reduced sentence. (*People v. Elam*, 156 Ill. App. 3d at 689; *People v. Weger* (1987), 154 Ill. App. 3d 706, 710-11, 506 N.E.2d 1072; *People v. Bone* (1987), 154 Ill. App. 3d 412, 416-17, 506 N.E.2d 1033.) Such a tactical decision is not objectionable *per se*, and may even "be viewed as good defense strategy" when appropriate. *People v. Weger*, 154 Ill. App. 3d at 710-11.

In the case *sub judice*, the State presented substantial evidence of defendant's guilt which, when considered together with defense counsel's certain knowledge of his client's criminal record, does not support a finding of ineffective assistance. Furthermore, the strength of the State's evidence renders the probability of a different verdict, even without counsel's alleged errors, almost negligible.

## IV

Defendant next insists that the court imposed his sentence to life imprisonment pursuant to an unlawful statute and that the sentence must be vacated. In particular, defendant asserts the Illinois General Assembly ignored constitutionally mandated procedures when it amended the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*) (Act) in 1980, rendering the Act unconstitutional.

The State claims defendant waived this issue for consideration on review, having failed to raise it during the sentencing hearing. The constitutionality of a statute cannot be contested for the first time on appeal, without objecting to it during the proceedings below (*People v. Cannady* (1987), 159 Ill. App. 3d 1086, 1088, 513 N.E.2d 118; *People v. Fenwick* (1985), 137 Ill. App. 3d 457, 459, 484 N.E.2d 915); nevertheless, this court may entertain defendant's argument and we elect to do so here. *People v. Poole* (1988), 167 Ill. App. 3d 7, 17.

Defendant contends the legislature, in amending the Act, ignored the rule that all bills submitted for legislative approval must be read by title on three separate days in each house (Ill. Const. 1970, art. IV, §8(d)); our courts, however, have twice considered this argument and twice found it meritless. (See *People v. Poole*, 167 Ill. App. 3d at 18; *People v. Cannady*, 159 Ill. App. 3d at 1089.) Furthermore, amendments germane to the subject matter of the bill as originally introduced are expected from the three-reading requirement. (*Giebelhausen v. Daley* (1950), 407 Ill. 25, 46, 95 N.E.2d 84.) When applied to legislative provisions, "germane" means "a common tie" or a tendency to promote the object and purpose of the act to which it belongs. *Giebelhausen v. Daley*, 407 Ill. at 47; *People v. Cannady*, 159 Ill. App. 3d at 1089.

In the case at bar, the fifth House amendment to Senate Bill 1524 (81st Ill. Gen. Assem., Senate Bill 1524, 1980 Sess.), deleted entirely the bill's original text, pertaining to feticide, and replaced it with a paragraph amending the habitual criminal provision in the criminal code, 15 Legislative Synopsis & Digest, 81st Ill. Gen. Assem., vol. 1, at 332 (1980).

Defendant maintains the amendment was not germane to the bill's subject matter as originally conceived in the Senate, namely, feticide. Defendant improperly focuses, however, on feticide as the subject matter to which the amendment must be germane. At its inception, Senate Bill 1524 was meant to amend the 1961 criminal code; the bill in its final form was similarly designed to alter the Code by expanding existing bases within it for finding an individual a habitual criminal. See Ill. Rev. Stat. 1979, ch. 38, par. 33B—1; Ill. Rev. Stat.

1985, ch. 38, par. 33B—1; 15 Legislative Synopsis & Digest, 81st Ill. Gen. Assem., vol. 1, at 331-32 (1980).

The 1980 amendment promoted the "object and purpose" of the criminal code and was thus germane to the actual statute amended. (*People v. Cannady*, 159 Ill. App. 3d at 1089-90.) The Habitual Criminal Act is constitutional insofar as the present challenge is concerned.

V

■ Defendant also argues he was wrongfully sentenced to life imprisonment because the State failed to prove his two prior felony convictions beyond a reasonable doubt.

The Act permits the imposition of an enhanced penalty for those individuals convicted of three Class X felonies within a 20-year period (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1), provided the State proves defendant's convictions beyond a reasonable doubt. *People v. Casey* (1948), 399 Ill. 374, 378, 77 N.E.2d 812; *People v. Harris* (1987), 157 Ill. App. 3d 70, 74, 510 N.E.2d 107, *appeal denied* (1987), 116 Ill. 2d 567.

Certified copies of conviction demonstrating defendant's prior criminal record are *prima facie* evidence of that record only (Ill. Rev. Stat. 1985, ch. 38, par. 33B—2(b)), and are not alone adequate to meet the burden of proof (*People v. Langdon* (1979), 73 Ill. App. 3d 881, 885, 392 N.E.2d 142). Instead, the convictions must be supported by evidence that the person named in the records and defendant are identical, such as testimony concerning the previous convictions by the arresting officer on the prior felony charge, the presiding judge at the previous trial, or parole counselors, correction officers and others. *People v. Langdon*, 73 Ill. App. 3d at 885.

In this case the State introduced certified copies of conviction from the circuit court of Cook County: one recorded a plea of guilty to armed robbery entered on January 25, 1980, by "John Collins" and his subsequent sentence of 12 years to the Illinois Department of Corrections; the second contained "John Brown's" guilty plea to armed robbery on March 4, 1976, and the resulting sentence of four to six years in the State penitentiary.

The State also presented the testimony of Assistant State's Attorney Peggy Frossard that, in January 1980, she was assigned to prosecute a case concerning armed robberies. On January 25, 1980, the individual accused of committing these robberies, John Collins, pleaded guilty and received a 12-year prison sentence. Frossard identified defendant as the man she knew as John Collins in January 1980.

An identification supervisor for the Illinois Department of Correc-

tions averred that all inmates entering the department are assigned identification numbers; if an inmate released from the department returns at a later date, he is reassigned the same number. Comparing the fingerprint and photo "intake" card of John Brown and the intake card of John Collins, the supervisor asserted that the cards contained identical identification numbers, indicating that Collins and Brown were the same person.

Finally, a fingerprint expert stated he compared defendant's fingerprints with those of Collins and Brown as recorded on their intake cards; defendant's prints matched Collins', which in turn matched Brown's, again indicating that they were all the same person.

Defendant urges that Frossard's statements constitute hearsay improperly admitted into evidence; the State contends that defendant failed to object to the testimony at the sentencing hearing and therefore waived this issue on appeal.

Whether the court erred in admitting Frossard's testimony is immaterial. The prison officials' statements sufficiently corroborate the certified records of conviction to establish defendant's identification beyond a reasonable doubt. (*People v. McNeil* (1984), 125 Ill. App. 3d 876, 883-84, 466 N.E.2d 1058; *People v. Mason* (1983), 119 Ill. App. 3d 516, 522.) In *McNeil*, moreover, this court found that certified records of conviction, supported by testimony of, *inter alia*, two assistant State's Attorneys who prosecuted defendant in those convictions, "justified the [circuit] court's finding that defendant was, in fact, convicted of two previous armed robberies." (*People v. McNeil*, 125 Ill. App. 3d at 883-84.) The State here similarly proved defendant's convictions beyond a reasonable doubt.

For the foregoing reasons, we affirm the verdict rendered in the circuit court and the sentence imposed thereon.

Affirmed.

STAMOS* and SCARIANO, JJ., concur.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.