THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHA-WANDA COLLINS, Defendant-Appellant.

First District (5th Division)   No. 1—91—3512

Opinion filed June 17, 1994.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, and Michele L. Niermann, of Chapman & Cutler, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Martin P. Head, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Shawanda Collins was found guilty of residential burglary, armed violence, and two counts of armed robbery. The trial court entered judgment on the two armed robbery convictions and sentenced defendant to two concurrent eight-year terms of imprisonment. The trial court also imposed a $1,000 fine. Defendant appeals the convictions and the fine entered against her.

## FACTS

This case arose from events which allegedly occurred on July 27, 1990, at the Chicago apartment of Dwayne Ross (Ross). Ross, a friend named Althea Johnson, and Chicago police department officer Mark Flynn testified for the State.

Ross testified that on that night he was sleeping in his guest bedroom when, at approximately 2 a.m., he awoke to muffled voices. He arose and noticed that the outside door to the apartment, which he had locked before retiring, was wide open. He went into his bedroom where his guests, Althea and Gabriella Johnson were staying. There, he saw the two women against the wall. Defendant was going through his belongings in a wardrobe closet, while a man pointed a sawed-off shotgun at him. Ross was acquainted with defendant.

Ross stated that the gunman commanded him to get on his knees, threatening to shoot him. Ross obeyed. Defendant, who had a baseball

bat under her arm, asked Ross where the money was. Ross asked if defendant meant the $60 he owed her. She replied that she was talking about $200. Defendant then hit Ross two or three times in the face with her fist. As Ross attempted to stand, defendant and the gunman both ordered him to get down, and the gunman struck Ross in the face with his fist. As Ross attempted to block the blows with his arm, the gunman ripped gold chains from Ross' wrist.

Ross further testified that defendant threw some clothes at him and told him, "You are going with us." Defendant started pushing Ross out the door, saying, "You are going with me. You are going to die tonight. You are going to get $200 from somewhere." Defendant pushed him out of the apartment into the alley by a garage. At this point, Ross noticed that the gunman was not with them, so he struggled free of defendant and ran to a nearby shop where he called the police.

According to Ross, the police met him at the shop and they proceeded to the apartment. When they arrived, Ross saw that the door frame was splintered as if the door had been kicked open, the bedroom was "messed up," the television was smashed, and several items were missing, including a bus pass, $30 in cash, two watches and over 100 cassette tapes.

On cross-examination, the defense sought to impeach Ross with his preliminary hearing testimony in which he indicated that he was on his knees when defendant entered the bedroom. Regarding Ross' conversation with Officer Flynn and his partner, he did not recall mentioning that defendant carried a baseball bat or that she threatened his life, nor did Ross recall whether he called his swollen face to the attention of the officers. Ross also conceded that he did not request medical attention.

Althea Johnson (Althea) testified that she and her cousin were staying in Ross' bedroom that night, while Ross stayed in an adjacent room. At about 2 a.m., while she watched television, she heard a very loud kick at a door. She jumped from the bed onto the floor. Next she heard a second kick and realized there were intruders in the apartment. A man with a sawed-off shotgun entered the bedroom and ordered the two women to get up. The two women rose and stood beside the bed. The gunman threatened to "blow [their] heads off" if they moved. Five or ten minutes later, defendant entered the bedroom, while the gunman was still holding the gun on them. Then Ross entered and asked what was happening.

Althea testified that defendant said she wanted her $200 and told Ross to get on the floor. Both defendant and the gunman hit Ross in the face with their fists. Defendant rummaged through the closet,

threw something at Ross, and told him he was coming with her. As the gunman stood near Ross, defendant smashed the television, ripped the phone wire from the wall, threw the phone, then dragged Ross from the room.

Althea further testified that after defendant dragged Ross outside, the gunman rummaged through the room and took two gold rings and a watch. He made Althea open dresser drawers, from which he took $30, a bus pass, and another watch. He also took a case filled with cassette tapes. The gunman threatened to shoot the two women and ordered them to undress and lie face down on the bed. After 5 or 10 minutes, Althea saw the gunman leave. They waited a little while before getting up and dressing. Althea went to the apartment door and closed it, noticing it did not make a latching sound. She returned to the bedroom. Shortly, she heard keys rattling, and the police entered.

On cross-examination, Althea related that defendant returned to the apartment before the gunman left. At this time, the gunman handed defendant a microwave oven. As to any words exchanged at that time between the gunman and defendant, Althea's testimony was contradictory, but her testimony was consistent that the gunman handed the oven to defendant, who took it. Althea also stated on cross-examination that she did not see defendant with a baseball bat. She could not recall if she had told the police who came to the apartment that defendant had struck Ross or that the microwave had been taken.

Officer Mark Flynn also testified for the State. He and his partner, responding to a radio call, met Ross outside a shop and then proceeded to the nearby building where Ross lived in the basement apartment. They spoke with Ross on the front lawn, then went with him to the back basement door. The door was loose from the hinges and the door frame was broken away in the area of the lock. Officer Flynn testified that they went through the door into the kitchen, which appeared to have been ransacked. They walked through a sparsely furnished room to a bedroom in the front of the apartment. Clothes were strewn about the bedroom, drawers were open, and the mattress was pulled away from the bed frame. Officer Flynn also testified that Althea Johnson was crying, and Mr. Ross was agitated and on the verge of tears.

Over defendant's objections, Officer Flynn was allowed to testify to the particulars of his conversation with Ross, which included statements that Shawanda Collins and a man with a gun had come into his apartment, that Shawanda demanded $200, and that he was struck, losing some jewelry in the process. Officer Flynn was also

allowed to testify that Ross told him the microwave oven and $30 had been taken. Officer Flynn further testified that he saw no cuts or bleeding, but he did ask Ross if he wanted to go to the hospital to see a doctor. Ross declined.

On cross-examination Officer Flynn stated he did not recall Ross mentioning that defendant had a baseball bat, nor did he recall with certainty the amount of money Ross said had been taken, although his police report indicated the amount was $30. Although the report did not mention that Ross' life was threatened or that Ross had been beaten, Officer Flynn stated that such details, if related, might not be included by him in a police report.

The defense presented no witnesses. A stipulation was admitted which indicated that, if the court reporter at an earlier preliminary hearing were called, she would testify that Althea's testimony during that preliminary hearing included no mention of cassette tapes, a microwave oven, or being told to undress and that no questions were asked on those subjects.

The jury found defendant guilty of residential burglary, armed violence, the armed robbery of Ross, and the armed robbery of Althea. The trial court sentenced defendant to concurrent eight-year terms for each of the two armed robbery convictions and fined defendant $1,000 to be paid from the $1,500 cash bond which had previously been posted.

OPINION

On appeal, defendant asks that the armed robbery convictions be reversed and remanded for a new trial based on the following contentions: (1) that the evidence was insufficient to prove guilt beyond a reasonable doubt; (2) that the trial court erred in admitting Officer Flynn's testimony as to his conversation with Mr. Ross; (3) that certain comments by the prosecutor during closing argument were so prejudicial that reversal is required; and (4) that the trial court erred in refusing to instruct the jury on the lesser included offense of robbery. In addition, defendant contends that the trial court erred in imposing a $1,000 fine against defendant without regard to defendant's ability to pay.

Defendant's first contention is that the evidence disclosed so many inconsistencies and improbabilities that a reasonable doubt remains as to defendant's guilt. Defendant maintains that, if the kicks at the door were very loud, as Althea testified, it is highly improbable that Ross would not have heard them, but would have awakened at the sound of muffled voices in the next room. Defendant also finds improbable defendant's ability to drag the 190-pound Ross

from the apartment. In addition, defendant claims it is improbable that defendant and the gunman struck Ross' face with their fists, yet Officer Flynn did not recall noticing any injury and Ross did not request medical attention.

Defendant also points to certain testimony at trial which she considers to be inconsistent. For example, Althea testified that she jumped out of bed onto the floor after hearing the first kick at the door. Defendant contends this indicates she was standing when the gunman entered the room. Yet Althea testified that she and Gabriella stood up when the gunman ordered them to do so. Defendant also points out that, while Ross testified he saw the women standing against the wall, Althea testified that the women were sitting on the bed. Defendant further notes that, although Althea testified that defendant smashed a television set and threw a telephone immediately before forcing Ross from the apartment, Ross failed to mention these events in his testimony. Lastly, defendant points out that, although Ross testified that defendant held a baseball bat under her arm while in the bedroom, he did not mention this to Officer Flynn, and Althea testified that she never saw defendant with a baseball bat.

In addition, defendant notes that, although Ross' trial testimony was that defendant was already in the bedroom when he entered, he testified at a preliminary hearing that he was on his knees in the bedroom when defendant entered the room. Defendant also points out that, although Althea testified that the gunman handed the microwave oven to defendant and that the gunman forced her and her cousin to undress and lie on the bed, no mention was made of these events when Officer Flynn interviewed her, nor did she mention these events in her preliminary hearing testimony.

On the other hand, the State contends that the alleged improbabilities and inconsistencies can be explained. For example, because Althea was already awake when the apartment door was kicked in, the State contends it is not improbable that she would have heard that sound while Ross, who testified he was asleep in a room with a fan on high, did not awake until the gunman threatened the women in the room next to him. The State also points out that, between the time the door was kicked in and the time the gunman entered the bedroom, there was ample time for Althea to have stood up and then returned to a sitting position on the bed. Likewise, there was ample time later for the women to move from against the wall, where Ross first noticed them, to a sitting position on the bed.

Regarding Ross' failure to testify about defendant smashing the television and the telephone, the State points out that Ross' attention at that point was centered on the gunman who was ripping the chains

from his arm, while Althea's attention was on defendant's actions at that moment. The State also claims there is very little difference between Ross' testimony that defendant pushed him from the room and Althea's testimony that defendant dragged him. As to Officer Flynn's failure at trial to recall any cuts and bruises, his testimony that he asked Ross if he wanted to go to the hospital to see a doctor indicates that he may have noticed some signs of injury at the time.

Regarding Althea's failure to mention before trial how the microwave was taken and the fact that she and her cousin were forced to undress, the stipulation at trial specifically stated that, at the preliminary hearing, no questions were asked of Althea as to these matters. As for her failure to tell Officer Flynn of these events, Althea's cross-examination testimony was that she did not recall what she had told Officer Flynn at the time. Officer Flynn did not testify to what Althea told him. Lastly, the State points out that Althea and Ross were both in a state of fear and panic which could account for some inconsistency and distortion.

●1 Where the sufficiency of the evidence is challenged on appeal, it is not the reviewing court's function to retry the case. A conviction will not be set aside "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The reviewing court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421; *Collins*, 106 Ill. 2d at 261.

We note that, even if the testimony which defendant contends was inconsistent or improbable could not be satisfactorily explained or resolved as the State urges, the areas of alleged inconsistency and improbability are largely collateral and do not necessarily touch upon the essential elements of armed robbery. Armed robbery requires that a defendant take property from the person or presence of another by use of force or threat of imminent use of force while armed with a dangerous weapon. (720 ILCS 5/18—1, 18—2 (West 1992).) Under an accountability theory, the defendant is responsible for another person's conduct constituting an element of the offense if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1992).

●2 While the inconsistent testimony as to whether defendant carried a baseball bat goes to the existence of the bat as a dangerous weapon, we note that, under a theory of accountability, that element of the offense could be satisfied by the jury's determination that the other person held the victims at gunpoint. Similarly, the testimony that the gunman tore Ross' bracelet from his wrist while holding him at gunpoint and took several items from Althea at gunpoint, if believed by the jury, could establish the taking of property from each victim under the threat of imminent use of force. Such testimony was uncontradicted. See, *e.g., People v. Gill* (1988), 169 Ill. App. 3d 1049, 1053, 523 N.E.2d 1239 (challenge to sufficiency of the evidence failed in armed robbery case where, although there was contradictory testimony as to the color of the gun used and the number of shots fired, there was no dispute that defendant had a gun which he fired).

The defense maintains that the evidence was insufficient to establish accountability. Defendant implausibly contends she was acting independently of the gunman and was simply pursuing her own interest in recovering money owed to her by Ross. In that respect, the defendant sought to impeach Althea's trial testimony that the gunman passed the microwave to defendant, which would overtly establish her complicity in the gunman's conduct. However, there was ample testimony from which the jury could have inferred that defendant aided the gunman with the intent to promote or facilitate the commission of armed robbery. A common design can be inferred from the circumstances surrounding the commission of the crime. (*Furby*, 138 Ill. 2d at 457; *People v. Reid* (1990), 136 Ill. 2d 27, 65, 554 N.E.2d 174; *People v. Ruckholdt* (1984), 122 Ill. App. 3d 7, 12, 460 N.E.2d 847.) Although mere presence at the scene and knowledge that a crime is being committed are not a sufficient basis, without more, to establish accountability (*People v. Banks* (1975), 28 Ill. App. 3d 784, 786, 329 N.E.2d 504), those circumstances may be considered by the jury, along with other circumstances surrounding the crime, such as defendant's flight from the scene, defendant's failure to report the crime, words of agreement, active participation, or failure to oppose or disapprove of the commission of the crime. *Reid*, 136 Ill. 2d at 62; *Ruckholdt*, 122 Ill. App. 3d at 10-11.

In the present case, both Ross and Althea testified that Ross was struck by both defendant and the gunman while the gunman pointed the gun at him and that the gunman continued to point the gun at Ross as defendant forced Ross from the room. By doing so, defendant facilitated the gunman's ability to take items from the apartment. Both victims testified that defendant said she intended to get $200

from Ross while Ross was held at gunpoint by the gunman, thus again utilizing and availing herself of the benefits of the gunman's action. Defendant was not held at gunpoint or robbed, nor was there any testimony that she tried to oppose the gunman. Thus, it would have been reasonable for the jury to conclude from these circumstances that defendant, rather than being a mere bystander or common victim, aided the gunman in the commission of armed robbery and that such was her intent. See *Reid*, 136 Ill. 2d at 64-65; *Ruckholdt*, 122 Ill. App. 3d at 12.

We also note that, with respect to defendant's acceptance of the microwave oven, her impeachment based on the fact that Althea made no mention of the microwave oven in her preliminary hearing testimony is very tenuous at best, since the record corroborates the State's explanation that no question was put to her to elicit that fact. Moreover, while there is some indication that Althea's testimony wavered as to what was said when the gunman handed the microwave oven to defendant, it did not waver as to the fact that the microwave oven was handed to her and that she took it.

Viewing the evidence in the light most favorable to the prosecution, we cannot conclude that the evidence was so improbable or unsatisfactory that no rational trier of fact could have found the elements of armed robbery beyond a reasonable doubt. (See *Collins*, 106 Ill. 2d at 261.) "Where evidence is conflicting, it is the prerogative of the jury to ascertain the truth; a reviewing court may not substitute a different conclusion on questions regarding the credibility of witnesses." *Gill*, 169 Ill. App. 3d at 1053.

Defendant also contends that the trial court erred in admitting Officer Flynn's testimony as to what Ross told him the night of the robbery. Specifically, Officer Flynn was allowed to testify as follows:

"He had stated at one point it was Shawanda. It was Shawanda. He had stated that Shawanda Collins came in and demanded two hundred dollars of his money. Another black came in and produced a shot gun. He had stated that he was told to lay on the floor. Shawanda Collins got two hundred dollars of his money. He was hit whereupon he lost some jewelry."

Officer Flynn was then asked if he had another conversation with Ross. He replied that they had also talked in the kitchen. Over defendant's objection, Officer Flynn testified, "He said that they got the microwave and $30.00. He said this is the second time. He told me different things that were taken."

Defendant contends that these statements were inadmissible hearsay. The State argues that the statements were admissible under the rule of completeness because the defense invited testimony about

Ross' conversation with Officer Flynn when it cross-examined Ross about parts of that conversation. Under the rule of completeness, " 'if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury.' " *People v. Williams* (1985), 109 Ill. 2d 327, 334, 487 N.E.2d 613, quoting *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 556, 356 N.E.2d 779.

On cross-examination of Ross, defense counsel elicited testimony that when Ross spoke to the officers who escorted him back to his apartment he never told them about a baseball bat. He did not ask them to take him to a doctor, and he could not recall telling the officers that he was injured. Ross also stated that he was not sure whether he told them anything about a threat to kill him. Defendant contends that the statements elicited from Officer Flynn by the State were not admissible under the rule of completeness because they did not pertain to or purport to explain those omissions.

•3 The purpose of the rule of completeness is "to put a correct construction upon the part which the first party relies upon, and to avoid the danger of mistaking the effect of a fragment whose meaning is modified by a later or prior part." (II J. Wigmore, Evidence § 2113, at 657 (3d ed. 1978).) This purpose is not served when additional parts of a conversation are allowed without regard to their relevance to the parts of the conversation initially elicited by the opponent. See *Williams*, 109 Ill. 2d at 335 ("the right to bring out all of a conversation is not absolute, but depends upon the *relevancy* of the additional parts of the conversation the party wishes to introduce"). (Emphasis in original.)

•4 The portion of Officer Flynn's testimony which relates that Ross said he had been "hit" during the robbery is relevant with respect to that portion of Ross' impeachment dealing with his failure to ask the officers to take him to a doctor, since the failure to make that request would connote that he was not struck or injured, in contradiction to his testimony on direct examination. Therefore, that portion of Officer Flynn's testimony was clearly admissible under the rule of completeness to modify the earlier statement. See II J. Wigmore, Evidence § 2113, at 657 (3d ed. 1978) ("the purpose is accomplished when the tribunal has had placed before it the remaining parts which may modify or explain the first part").

However, allowing Officer Flynn to testify to the remaining statements made by Ross is far less justifiable. In this case, the part of the conversation first admitted during Ross' cross-examination consisted of certain omissions in what Ross disclosed to the police. In

context the impeachment of Ross does not connote that he failed to report the crime to the police, but is limited to specific details omitted. Such limited impeachment should not ordinarily suffice to open the door for complete reiteration of his entire prior statement. Admitting the remainder of their conversation did not serve to explain or dilute Ross' failure to mention the baseball bat or his possible failure to mention the threat to his life. See *People v. DePoy* (1968), 40 Ill. 2d 433, 438, 240 N.E.2d 616 (" 'when any part of an oral statement has been put in evidence by one party, the opponent may afterwards (on cross-examination or reexamination) put in the remainder of what was said *on the same subject at the same time*' "), quoting II J. Wigmore, Evidence § 2115, at 657 (3d ed. 1978). (Emphasis in original.)

●5 However, while it would be unnecessary to admit the entire conversation in order to modify or place in context the parts stated earlier, it is clear that in this instance the admission of the additional statements would, in any event, be harmless error. We note, first of all, that the statements elicited from Officer Flynn were cumulative and did not establish any fact about the commission of the crime which was not established by the testimony of Althea or Ross. (See *People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164.) Their testimony converged on all essential elements of the crime. Both witnesses identified the defendant in court. Both testified to the presence of a man with a gun and to defendant's demand for $200. Both witnesses testified that Ross was told to get down on the floor and that he was hit. Both testified that the gunman took jewelry and money, Ross testifying that, while he was being struck, the gunman took the gold chains from his wrist, and Althea testifying that the gunman also took rings and watches and $30. The taking of the microwave oven was also testified to by Althea.

Moreover, upon closer analysis in the present case there is virtually nothing in the statements testified to by Officer Flynn which defendant overtly contested. Defendant does not dispute that she was present or that she demanded $200 from Ross. Nor does she dispute the presence of a man with a gun. Defendant's theory was that she was in the apartment, acting independently for her own purposes, *i.e.*, to retrieve her $200. As such her defense was predicated on a disassociation of her own actions from those of the gunman. In this respect, defendant would not necessarily contest the testimony that Ross was hit or that jewelry was taken, although she would disavow any complicity in what the gunman had done, contending that the gunman acted alone. Nor would defendant necessarily dispute that a microwave oven had been taken, as long as the testimony was not that she had been the one to take it. Officer Flynn's testimony that

Ross told him the microwave had been taken does not purport to put the microwave oven in the hands of defendant. In this respect we note that Ross' in-court testimony disclosed that he did not personally witness the taking of the microwave.

The prior statements of Ross to which Officer Flynn testified therefore had little or no bearing on any disputed part of Ross' in-court testimony.[1] Thus, the impact of the statements would have been at best remote and tangential. In this respect, defendant's reliance on *People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895, is misplaced. In that case, the court held that the admission of a rape victim's father's testimony about his telephone conversation with the victim was not harmless error. (*Lawler*, 142 Ill. 2d at 560-61.) The court stated, " 'Where guilt or innocence depends entirely on the credibility of an accuser and the defendant, no error should be permitted to intervene.' [Citation.]" (*Lawler*, 142 Ill. 2d at 561-62.) However, we note that in *Lawler* the prosecution's case hinged almost entirely on the testimony about the telephone conversation. Thus, unlike the present case, admission of the conversation enhanced the complainant's credibility regarding the defendant's commission of the essential elements of the crime.

We also note that in this case both participants to the conversation were subject to cross-examination. While it is true that the declarant's availability for cross-examination does not change the characterization of the evidence as hearsay (*Lawler*, 142 Ill. 2d at 557), the ability to cross-examine the declarant is relevant in determining that the admission of hearsay was harmless. See *Robinson*, 73 Ill. 2d at 199 (no reversible error where out-of-court declarant was subject to cross-examination). Accord *People v. Carpenter* (1963), 28 Ill. 2d 116, 122, 190 N.E.2d 738.

Defendant's next contention is that the prosecutor, in closing argument, misstated the law on accountability and improperly vouched for the credibility of a State witness. Defendant claims that the improper remarks necessitate reversal.

During closing argument, the prosecutor read to the jury the instruction which would later be given on accountability. She then stated, "When you act together, you are legally responsible for what the other person does." She mentioned certain evidence to support her contention that defendant and the gunman had acted together.

---

[1] We note that to the extent it would have had any bearing on Ross' impeachment, it would have been admissible under the rule of completeness discussed earlier. See *Williams*, 109 Ill. 2d at 334; *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d at 556.

Afterwards, she stated, "the jury instructions will read 'the defendant or one for whose conduct she is legally responsible.' If there is any confusion, just insert the word 'partner.'" Defendant objected. The trial court then told the jury, "The instruction will be read to you by the judge and the instructions are the correct law in the State of Illinois that's read to you by the judge." During rebuttal argument the prosecutor stated, "The law says if she in any way helps him either before or during the commission of the crime, she is guilty." Upon defendant's objection, the trial court again told the jury that the instruction would be read to them by the judge and that, if there was any discrepancy between what the attorneys said and the instruction of the court, the jury should rely solely on the judge's instruction. In its instructions to the jury, the court instructed that closing arguments are not evidence. The court read the jury instruction which properly stated the law on accountability.

Defendant contends that the prosecutor's suggestion that the word "partner" be substituted for "one for whose conduct she is legally responsible" misstates the law on accountability. As a result, she claims that she was denied her right to a fair trial. We disagree.

●6 Although the word "partner" may not adequately describe the requirements for accountability, we note that the prosecutor, before suggesting use of the word "partner," correctly stated the elements required for accountability when she read the proposed jury instruction on that subject. More importantly, twice during the arguments, the trial judge admonished the jury that the proper law on accountability would come from the judge during instructions to the jury. The jury was properly instructed as to the elements required under a theory of accountability. Although the prejudicial effect of improper remarks may not always be offset by a court's admonishment to the jury where remarks are highly inflammatory (see *People v. Garreau* (1963), 27 Ill. 2d 388, 391, 189 N.E.2d 287), such is not the case here. Nor is this a case where repeated misstatements of the law passed without objection and there is substantial evidence on both sides so that a different verdict might have resulted. (See *People v. Eckhardt* (1984), 124 Ill. App. 3d 1041, 1043-44, 465 N.E.2d 107.) Here, where the evidence establishing accountability was strong, it cannot be said that, had the prosecutor not suggested use of the word "partner," a different verdict would have resulted. The court's admonishments to the jury and its instructions to the jury were sufficient to correct any false impression caused by the prosecutor's use of the word "partner." See *People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E. 2d 746 (prosecutor's misstatement of law of accountability did not constitute error where trial court admonished jury after

each objection that the court would instruct the jury on the law of accountability). Accord *People v. Manley* (1991), 222 Ill. App. 3d 896, 907, 584 N.E.2d 477 ("Although every defendant is entitled to a trial that is free from improper comments or arguments that engender prejudice, a conviction will not be disturbed on review unless such remarks constitute a material factor in the conviction, or result in substantial prejudice to the accused").

Regarding the prosecutor's statements about Althea's credibility, we note that it is generally improper for a prosecutor to vouch for the credibility of a witness or to express a personal opinion about the case. (See *People v. Johnson* (1986), 114 Ill. 2d 170, 198, 499 N.E.2d 1355, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) However, a prosecutor may express an opinion if it is based on the evidence. See *People v. Emerson* (1987), 122 Ill. 2d 411, 434-35, 522 N.E.2d 1109, *cert. denied* (1988), 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 246 (court upheld propriety of a prosecutor's statement that he knew a witness had told the truth because, "You tell by the way the man told you what happened that he was telling you the truth." The reviewing court held that this was a proper comment, as it foreshadowed the jury instruction on credibility of witnesses).

•7 In the present case, the prosecutor remarked that Althea "testified to the truth of what happened. You observed her testimony. You observed her demeanor, her behavior, what she said to you, what she told you was the truth of what happened." As did the comment in *Emerson*, this comment properly reflected on the jury's ability to consider a witness' demeanor. Moreover, after defendant objected to this remark, the trial court admonished the jury, "It is the juror's job to determine the credibility of all witnesses."

Defendant further contends that the trial court committed reversible error when it refused to instruct the jury on the lesser included offense of robbery. A jury instruction on a lesser included offense is proper where the evidence would permit the jury to rationally find the defendant guilty of the lesser offense, but not guilty of the greater offense. *(People v. Bryant* (1986), 113 Ill. 2d 497, 507, 499 N.E.2d 413; *People v. Arnold* (1991), 218 Ill. App. 3d 647, 652, 577 N.E.2d 1355.) Thus, the lesser included offense instruction is only appropriate "where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser included offense." *(Bryant*, 113 Ill. 2d at 507.) A trial court does not err in refusing to give a lesser included offense instruction "where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged." *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525,

281 N.E.2d 389. See also *People v. Thompson* (1976), 35 Ill. App. 3d 773, 776, 342 N.E.2d 445 (robbery instruction properly refused where evidence yielded only two possible conclusions, namely that defendant either was not present at the scene of the crime or was present and committed an armed robbery with a gun).

Defendant contends that a robbery instruction was warranted here because the jury could have rationally concluded that defendant herself was unarmed and that she was not legally responsible for the gunman's conduct. Where there is conflicting evidence in an armed robbery case as to whether a defendant was armed with a dangerous weapon, an instruction on robbery is appropriate, as armed robbery has all the elements of robbery plus being armed with a dangerous weapon. (*People v. Willis* (1977), 50 Ill. App. 3d 487, 492, 365 N.E.2d 300.) However, where there is no dispute on the issue of whether there was a dangerous weapon, it is error to give such an instruction. (*Arnold*, 218 Ill. App. 3d at 652.) There is contradictory evidence in this case regarding whether defendant was armed with a baseball bat. Ross testified that she was, while Althea testified she did not see defendant with a bat or any weapon. However, it was undisputed that the male intruder carried a sawed-off shotgun which he aimed at Ross and the two Johnson women. If the jury believed that the requirements for accountability had been met, then, there being no dispute that the man was armed with a dangerous weapon, the robbery instruction would have been improper. *Arnold*, 218 Ill. App. 3d at 652 (instruction correctly refused where there was no dispute as to existence of a gun).

●8 It is conceivable, albeit unlikely, that a jury could have found that defendant acted independently from the gunman and thus was not accountable for his conduct. However, under the circumstances of this case, such a finding would also necessitate a finding that defendant was not guilty of any offense. Under the evidence in this case, there was no way for the jury to reject her guilt on the armed robbery charge on a theory of accountability and still find her guilty of the lesser included offense.

The testimony in this case was that, except for the microwave oven, all items were taken by the gunman while defendant was not in the room. Absent accountability, Althea's testimony about how the microwave oven was taken is the only basis upon which to predicate that defendant took any property. If the jury disbelieved that testimony in concluding that defendant was not accountable for the gunman's conduct, it must also conclude that defendant took no property. Thus, a guilty verdict on the charge of robbery alone would not be possible. The only options were to find defendant guilty or not

584

guilty of the greater offense of armed robbery. As stated earlier, where these are the only two options, an instruction on the lesser included offense is not proper. *Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445; *Bembroy*, 4 Ill. App. 3d at 525. See also *Bryant*, 113 Ill. 2d at 507.

●9 Finally, defendant contends that the trial court erred in assessing a fine of $1,000 to be paid from the cash bond which had been posted, since the record clearly shows defendant was indigent. The State concedes the merit of defendant's position on this point, acknowledging our determination in *People v. Echols* (1986), 146 Ill. App. 3d 965, 497 N.E.2d 321, in which we vacated a fine imposed by the trial court because there had been no determination that defendant had the financial ability to pay it. In that case we held that, although the defendant posted a bond in excess of the amount of the fine, that did not indicate the defendant had the ability to pay the fine, as the money for the cash bond may have been borrowed or paid by family or friends. (*Echols*, 146 Ill. App. 3d at 977-78.) Accordingly, the trial court's order imposing the fine is vacated.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in all respects except the imposition of the fine. The imposition of the fine is vacated.

Affirmed in part and vacated in part.

MURRAY, P.J., and COUSINS, J., concur.