(No. 48925.—

SHIREEN BENJAMIN *et al.,* Appellees, v. DEVON BANK, Trustee, *et al.,* Appellants.

*Opinion filed October 5, 1977.*

Foran, Wiss and Schultz, and Edwin M. Berman, of Berman and Newman, of Chicago (Richard A. Devine, of counsel), for appellants.

Martin S. Gerber and Ronald M. Brown, of Chicago, for appellees.

David A. Epstein and Lee J. Schwartz, of Chicago, and Gerald W. Shea, of Berwyn (James J. Bagley, law student, of Chicago, and Thomas R. Dodegge, of Springfield, and Joseph P. McGah, of Forest Park, of counsel), for *amici curiae.*

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The Director of the Department of Labor and the Director of the Department of General Services of the

State of Illinois appealed from the order of the circuit court of Cook County preliminarily enjoining them and the Comptroller from expending any funds, under appropriation bill Public Act 79—1267, for the leasing and operation of an unemployment insurance office at 6220 North California Avenue in Chicago. Pursuant to Supreme Court Rule 302(b) we allowed defendants' motion for direct appeal.

On April 13, 1976, defendant Director of the Department of General Services, on behalf of the State, entered into a lease with defendant Devon Bank as trustee, under its Trust No. 2734, of a one-story building and 50-car parking lot for the use of the Department of Labor, Bureau of Unemployment Security, as an unemployment insurance office. The lease was to become effective August 1, 1976. Subsequent to the execution of the lease, the General Assembly enacted Public Act 79—1267, a general appropriation bill for the Department of Labor, section 5.1 of which provided:

> "No funds appropriated in Section 3 of this Act may be expended for the opening and staffing of an Unemployment Insurance, Employment Service or Work Incentive office if the office space or facility rented is located within 500 feet of a school in any city with a population over 1,000,000." (1976 Ill. Laws 217, 221.)

Section 3, to which section 5.1 referred, appropriated Federal funds derived from title III of the Social Security Act for administration of the Unemployment Insurance Act.

On August 18, 1976, plaintiffs, Shireen Benjamin, Doris Bloom, Raymond Colby, Ruth Hapner, Daniel Witt, "in their own behalf and on behalf of all other taxpayers similarly situated," and North Town Community Council, in behalf of itself, its members and "other organizations similarly situated," filed a two-count complaint for declaratory judgment and injunctive relief. In count I plaintiffs

alleged that section 5.1 prohibited the expenditure of funds for the leasing of the premises for the reason that they were located within 500 feet of a school within the city of Chicago, a city with a population in excess of 1,000,000, and that the proposed expenditure of funds should be enjoined. Count II was dismissed on defendants' motion, and no cross-appeal was taken from that order. The circuit court held Public Act 79—1267, and "particularly" section 5.1, valid and effective and issued the injunction.

Defendants contend that section 5.1 of the Act did not deal with the subject of appropriations and was therefore violative of article IV, section 8(d), of the 1970 Illinois Constitution, which in pertinent part provides, "Appropriation bills shall be limited to the subject of appropriations." They contend, too, that this action was improperly brought for the reason that section 3 of Public Act 79—1267 did not appropriate public funds; that plaintiffs have failed to meet the requirements for issuance of a preliminary injunction; and that section 5.1 was special legislation prohibited by article IV, section 13, of the 1970 Illinois Constitution.

In an earlier opinion in this cause it was held that section 5.1 violated section 8(d) of article IV for the reason that it was a restriction on the location of facilities to be used by the Department of Labor and was not limited to the subject of appropriations. Following the allowance of plaintiffs' petition for rehearing, a majority of the party leadership of both houses of the General Assembly, the leadership on the appropriations committees, and other concerned members of both houses representing both major political parties, moved for leave to file an *amicus curiae* brief directed to the question of the proper construction of article IV, section 8(d), concerning appropriation bills. We allowed the motion and have so limited the issue on this rehearing.

*Amici* contend first that the "certification" or "enrolled bill" provision of article IV, section 8(d), precludes judicial inquiry concerning compliance with the requirements enumerated in section 8(d). The so-called "certification" or "enrolled bill" rule, contained in the last sentence of article IV, section 8(d), provides: "The Speaker of the House of Representatives and the President of the Senate shall sign each bill that passes both houses to certify that the procedural requirements for passage have been met."

The Committee on the Legislature of the constitutional convention explained the purpose of this provision as follows:

"3. Journal Entry and Enrolled Bill Rules—Presently Illinois has the 'journal entry' rule as distinguished from an 'enrolled bill' rule. It is proposed that Illinois adopt the 'enrolled bill' rule.

The 'journal entry' rule means that a piece of legislation can be challenged in the courts by pointing to a defect in its passage as reflected in the journal. Under this rule, a statute duely [*sic*] passed by the General Assembly and signed by the Governor may be attacked in the courts, not necessarily on its merits, but on some procedural error or technicality found in the legislative process. The 'journal entry' rule, as a result, leads to complex litigation over procedures and technicalities.

The 'enrolled bill' rule would provide that when the presiding officers of the two houses sign a bill, their signatures become conclusive proof that all constitutional procedures have been properly followed. The 'enrolled bill' rule would not permit a challenge to a bill on procedural or technical grounds regarding the manner of passage if the bill showed on its face that it was properly passed. Signatures by the presiding officers would, of course, constitute proof that proper procedures were ' followed.

For a thorough discussion of the constitutional and legal problems associated with the existing 'journal entry' rule, see: Braden and Cohn, *The Illinois Constitution,* pp. 153-154, 157-158, and 159-160.

The method recommended for adopting the 'en-

rolled bill' rule is to add the following phrase to the third paragraph of Section 8 c [now Section 8(d)] : 'to certify that the procedural requirements for passage have been met.' " 6 Proceedings 1386-87.

*Amici* point out that throughout the convention's deliberations section 8 of the legislative article and its subsections bore the captions:

Section 8.  Passage of Bills
    (a)  Enacting Clause
    (b)  Origin and Voting
    (c)  Record Vote
    (d)  Procedural Passage Requirements

(See Report of the Committee on the Legislative Article, 6 Proceedings 1379-80, 1386-87; Debates, 4 Proceedings 2700-01, 2881; Report of the Committee on Style, Drafting and Submission, Proposal No. 10, 6 Proceedings 1548-49; and Report of the Committee on Style, Drafting and Submission, Proposal No. 15, 7 Proceedings 2528-29.) They point out further that subsection 8(d), which throughout the convention's deliberations was labeled "Procedural Passage Requirements" contains both the "certification" rule and the five "procedural requirements for passage" to which the certification applies. From this they argue that upon being certified by the Speaker of the House of Representatives and the President of the Senate these five procedural requirements, namely that (1) a bill shall be read by title on three different days in each house, (2) a bill and each amendment thereto shall be reproduced and placed on the desk of each member before final passage, (3) bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject, (4) appropriation bills shall be limited to the subject of appropriations, (5) a bill expressly amending a law shall set forth completely the sections amended, are not subject to judicial review. We do not agree. It is clear from the report of the Committee on the Legislature that not all of the requirements of section 8(d)

were considered procedural and therefore immune from judicial review. In its explanation of the "single-subject" requirement, the report states:

> "Since the judicial branch may review challenges that the 'single subject' rule has been violated, both members of the General Assembly and the public retain sufficient protection from a provision in a bill which may be unrelated to the overall thrust of the bill." 6 Proceedings 1386.

As explained in the report of the Committee on the Legislature, the purpose of the "enrolled bill" rule is to preclude impeachment of a bill "certified" in accordance with section 8(d) by use of the Senate and House journals to show legislative noncompliance with constitutionally mandated procedural requirements. Examination of the journals is not necessary, however, to test the General Assembly's compliance with either the "single subject" or the "subject of appropriations" requirement of section 8(d), and we have reviewed statutes to determine legislative compliance with these requirements. (See *People ex rel. Kirk v. Lindberg,* 59 Ill. 2d 38 (subject of appropriations); *Fuehrmeyer v. City of Chicago,* 57 Ill. 2d 193 (single subject); *People ex rel. Ogilvie v. Lewis,* 49 Ill. 2d 476 (single subject).) We hold that the provision of section 8(d) limiting appropriation bills to the subject of appropriations is not a procedural requirement, but a constitutional limitation subject to judicial review.

We consider now the question whether section 5.1 was properly made a part of the appropriation bill or whether it was a substantive provision improperly included therein. Plaintiffs and *amici* have suggested various tests and standards for resolving this question and have cited opinions of the Attorney General and cases which show the standards applied by the courts of other jurisdictions whose constitutions contain similar limitations on appropriation bills.

We find it unnecessary to discuss these various standards or the numerous types of provisions used in appropriation bills. For the decision of the question presented, it suffices that section 5.1 of the appropriation bill purported to change the existing general substantive law, that it was therefore itself substantive in nature, and could not be included in the appropriation bill. Other legislation enacted by the General Assembly provided that the Director of the Department of Labor "may in his discretion and with the approval of the Governor, establish and maintain, at places other than the seat of government, branch offices for the conduct of any one or more functions of his department." (Ill. Rev. Stat. 1975, ch. 127, par. 17.) Section 5.1 placed an additional limitation on the location of a branch office, and this cannot be done in an appropriation bill.

*Amici* argue that although general statutes may grant the executive branch permissive authority to conduct certain programs or activities, the General Assembly has the inherent and fundamental power to decide which program or activity it will fund, including the operation of the disputed unemployment insurance office. We agree that the General Assembly may restrict and qualify the use to which funds appropriated may be put, but such qualifications and restrictions may not, in an appropriation bill, change existing statutes.

*Amici* state: "The legislature has not really changed the mode of drafting appropriation bills from that which it has used for 100 years. But all of a sudden, because of the 1970 provision, there is a real question of what is valid and what is invalid." They argue that holding section 5.1 of Public Act 79—1267 invalid will change the balance of power concerning a legislative restriction on executive spending. They concede that when a subject other than appropriations is included in an appropriation bill, the nonappropriation provision is not subject to the Gover-

nor's item reduction or veto power (art. IV, sec. 9(d)) and that it could not be selectively vetoed without delay or abrogation of all the appropriations contained in the bill. On the other hand, they contend that the General Assembly has the inherent right to restrict appropriations; that if such restrictions must be enacted in a separate bill, the Governor could approve the appropriation bill and veto the bill containing the restrictions and it would then take a three-fifths vote of the elected members in each house to pass the restrictions. As we have stated, it is only those restrictions or qualifications in an appropriation bill which are themselves substantive law that must be passed in a separate bill. This is required by the constitutional mandate that "Appropriation bills shall be limited to the subject of appropriations."

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*