(No. 77252.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL DUNIGAN, Appellant.

*Opinion filed April 20, 1995.*

238

HEIPLE, J., concurring in part and dissenting in part.

Michael J. Pelletier, Deputy Defender, and James E. Chadd, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Paul Dunigan, was convicted following a jury trial, in the circuit court of Cook County, of criminal sexual assault. Prior to the sentencing hearing, the State filed a motion to sentence the defendant as a habitual criminal. (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1.) At sentencing, the State presented evidence that the defendant had twice been convicted of and incarcerated for rape, Class X felonies. At the conclusion of the sentencing hearing, the sentencing court adjudged the defendant to be a habitual criminal and sentenced him to natural life imprisonment. The appellate court affirmed the defendant's conviction and sentence. (263 Ill.

App. 3d 83.) We allowed the defendant's petition for leave to appeal (145 Ill. 2d R. 315).

The defendant does not challenge his conviction for criminal sexual assault. The defendant likewise does not challenge the trial court's conclusion that the defendant's three Class X felony convictions rendered him eligible for sentencing as a habitual criminal under the Habitual Criminal Act (the Act). Rather, the defendant raises four separate constitutional challenges to the Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1 *et seq.*). The defendant claims that the Act: (1) violates the *ex post facto* and double jeopardy prohibitions of the State and Federal Constitutions; (2) violates article I, section 11, of the Illinois Constitution of 1970, the due process clauses of the State and Federal Constitutions and the eighth amendment to the Federal Constitution, because it requires imposition of a natural life term without regard to mitigating factors justifying a lesser sentence; (3) violates the separation of powers doctrine of the State constitution because it grants the judiciary's sentencing power to the prosecutor; and (4) was passed in violation of the "three-readings" and "single-subject" requirements of the State constitution.

## I. PREFATORY NOTE

Before addressing the defendant's constitutional challenges, we initially note that Illinois enacted its first habitual criminal statute in 1883. (1883 Ill. Laws 76; *People v. Yarsitis* (1950), 406 Ill. 99.) In 1963, the legislature repealed the Act, which remained dormant for 15 years. In 1978, the legislature reenacted the Act. Under the 1978 statute, only Illinois felony convictions that occurred after the February 1, 1978, effective date of the statute could be used to trigger application of the Act. In 1980, however, the legislature amended the Act to broaden the types of felony convictions that could trigger the Act to include convictions that occurred prior

to 1978 and convictions from other jurisdictions. The amended Act, which is the subject of this appeal, provides in part:

"Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1.)

The third offense must be committed after the July 3, 1980, effective date of the Act, and within 20 years of the date that judgment was entered on the first conviction, not including time spent in custody. The third offense must have been committed after conviction on the second offense; and the second offense must have been committed after conviction on the first offense. Ill. Rev. Stat. 1989, ch. 38, par. 33B—1.

As stated, the defendant concedes that his three felony convictions rendered him eligible to be sentenced under the Act. The defendant committed his third offense (criminal sexual assault) on May 10, 1991, which is within 20 years of his first Class X felony (rape) conviction in 1972. The third offense was committed after the second Class X felony (rape) conviction in 1979; and the second offense was committed after the first conviction. As stated, however, the defendant raises several constitutional challenges to the Act.

## II. ANALYSIS

### A. *Ex Post Facto* and Double Jeopardy Challenges

The defendant first contends that the Act violates the *ex post facto* and double jeopardy clauses of the Federal and State Constitutions. In support of his *ex post facto* claim, the defendant asserts that the statute punishes him, in part, for the 1972 rape offense that he

committed prior to the effective date of the Act. The defendant argues that a mandatory sentence of life imprisonment is imposed under the Act as punishment for all three of his felony convictions. He argues that the Act punishes persons "possessing the status of a habitual criminal," and that all three of his felony convictions are considered in declaring this status. He argues, therefore, that the Act punishes him, in part, for conduct he committed prior to the effective date of the Act, in violation of the *ex post facto* clause. The defendant claims that the Act, as originally enacted, avoided the *ex post facto* problem by expressly providing that only those convictions that occurred after the February 1, 1978, effective date of the Act could trigger a habitual criminal hearing. He argues that the 1980 amendment introduced the *ex post facto* problem into the statute, by broadening those felonies that could be used under the Act to include convictions that occurred prior to 1978.

The defendant's double jeopardy challenge is likewise based upon the claim that the Act imposes a mandatory sentence of life imprisonment as punishment for all three of his Class X felony convictions. The defendant points out that he has already been punished once for his 1972 and 1979 rape convictions. He argues that the Act violates the proscriptions against double jeopardy by punishing him a second time for these same offenses.

We reject the defendant's claims that the Act violates the *ex post facto* and double jeopardy clauses of the Federal and State Constitutions. The defendant's challenge to the Act fails because it rests upon an erroneous interpretation of that statute. The defendant mistakenly believes that the Act imposes a mandatory life sentence as punishment for all *three* of his felony convictions. The defendant also mistakenly believes that the Act creates a new substantive criminal offense. The

defendant assumes that a defendant who has three felony convictions that fall within the requirements of the Act is found guilty of a criminal offense, namely, of possessing the status of a "habitual criminal."

The United States Supreme Court and our court have repeatedly recognized, however, that habitual criminal statutes do not define a new or independent criminal offense. (See, *e.g., Gryger v. Burke* (1948), 334 U.S. 728, 92 L. Ed. 1683, 68 S. Ct. 1256; *People v. Williams* (1967), 36 Ill. 2d 505; *People v. Lawrence* (1945), 390 Ill. 499; *People v. Hanke* (1945), 389 Ill. 602; *People v. Atkinson* (1941), 376 Ill. 623.) Rather, such statutes simply prescribe the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions. The punishment imposed under the Act is for the most recent offense only. The penalty is made heavier because the person convicted is a habitual criminal. The Act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent felony offense. Instead, they simply aggravate or enhance the penalty imposed for the third and most recent offense. *Gryger v. Burke* (1948), 334 U.S. 728, 92 L. Ed. 1683, 68 S. Ct. 1256; *People v. Manning* (1947), 397 Ill. 358; *People v. Turner* (1947), 396 Ill. 221; *People v. Lawrence* (1945), 390 Ill. 499; *People v. Hanke* (1945), 389 Ill. 602; *People v. Atkinson* (1941), 376 Ill. 623; see also *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 74-75 (rejecting similar challenges to the juvenile habitual offender statute).

The defendant acknowledges that the United States Supreme Court and this court have repeatedly rejected claims that habitual criminal legislation violates *ex post facto* and double jeopardy proscriptions of the Federal and State Constitutions. He argues, however, that these cases are not relevant to this appeal, because this Act,

unlike other habitual offender legislation, makes the "status of habitual criminality" a substantive criminal offense and imposes a mandatory life sentence as punishment for all three felony convictions. The only support that the defendant offers for his claim that the Act creates a substantive offense is the fact that the Act appears in a chapter of the Criminal Code of 1961 entitled "Specific Offenses," rather than in the Unified Code of Corrections, where sentencing provisions are found.

We are not persuaded by the defendant's attempt to distinguish the Act from habitual criminal legislation previously upheld both in this court and in the United States Supreme Court. This court has suggested, on a number of occasions, that the Act is comparable to our prior habitual criminal statutes. See, *e.g.*, *People v. Levin* (1993), 157 Ill. 2d 138, 149 ("habitual-offender legislation neither creates a separate offense nor directly involves the prior crimes. The prior-conviction evidence *** is merely a matter of aggravation going solely to the punishment to be imposed"); *People v. Palmer* (1984), 104 Ill. 2d 340, 348 (Act deals exclusively with sentencing and simply enhances the penalty for the underlying offense).

We conclude that the legislature devised a separate sentencing scheme for criminal defendants who have demonstrated a propensity to commit violent crimes. Under the Act, the defendant received a mandatory sentence of life imprisonment as punishment for his third serious felony offense. The Act does not punish the defendant for conduct that occurred prior to the effective date of the Act; it punishes him solely for the criminal sexual assault he committed in 1991. The defendant's prior offenses are considered for the purpose of establishing matters in aggravation to support the disposition authorized under the Act for his third serious offense. Accordingly, we reject the defendant's claim that the Act constitutes an *ex post facto* law.

We also reject the defendant's claim that the Act violates the double jeopardy clauses of the State and Federal Constitutions. The Act does not punish the defendant a second time for his 1972 and 1978 rape convictions. Rather, his prior felony convictions operate *solely* as aggravating factors, which enhance the penalty imposed for the most recent offense. Use of defendant's prior convictions as factors in aggravation at the defendant's sentencing hearing does not violate double jeopardy proscriptions.

### B. Article I, Section 11, Due Process and Eighth Amendment Challenges

The defendant next argues that the Act is unconstitutional because it mandates a sentence of life imprisonment without regard for the seriousness of the offense or any other potentially mitigating factors. The defendant claims that the Act therefore violates article I, section 11, of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

Legislative enactments, including those which declare and define conduct constituting a crime and determine the penalties imposed for criminal conduct, are presumed constitutional. (*People v. La Pointe* (1981), 88 Ill. 2d 482; *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542.) The defendant here has failed to carry his burden of demonstrating that the Act violates article I, section 11, of the Illinois Constitution.

This court has repeatedly recognized that the legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of criminal sentences. (*People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 79; *People v. Taylor* (1984), 102 Ill. 2d 201, 205.) Article I, section 11, directs the

legislature, in exercising such power, to consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty commensurate to the seriousness of the offense. (*People v. Taylor* (1984), 102 Ill. 2d 201, 205.) That section also directs the judiciary, in exercising its power to sentence, not to abuse its discretion in imposing sentences within the framework established by the legislature. *People v. Taylor* (1984), 102 Ill. 2d 201, 206; 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1393.

Our court has previously rejected claims that the legislature violates article I, section 11, when it enacts statutes imposing mandatory minimum sentences. Our decisions have recognized that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence. *People v. Taylor* (1984), 102 Ill. 2d 201, 205.

In *People v. Taylor* (1984), 102 Ill. 2d 201, this court rejected the argument that a statute which required a minimum sentence of natural life imprisonment for persons convicted of more than one murder (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)) violated article I, section 11, of the Illinois Constitution. The court stated:

"[T]he legislature considered the possible rehabilitation of an offender, as well as the seriousness of the offense of multiple murders, in determining that in the public interest there must be a mandatory minimum sentence of natural life imprisonment. The rehabilitative objective of article I, section 11, should not and does not prevent the legislature from fixing mandatory minimum penalties where it has determined that no set of mitigating circumstances could allow a proper penalty of less than natural life for the crimes ***." *Taylor*, 102 Ill. 2d at 206.

Similarly, in *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, this court rejected a claim that the habit-

ual offender statute applicable to juvenile offenders violated the rehabilitative objective of article I, section 11, of the Illinois Constitution. Under the statute at issue in *Chrastka*, a juvenile who was adjudicated a delinquent three times for offenses that would have been felonies if committed by an adult was subject to mandatory confinement until 21 years of age. The *Chrastka* court found that the legislature could legitimately determine that a juvenile who committed three serious offenses had benefitted little from the rehabilitative measures of the juvenile court system and exhibited little prospect for restoration to useful citizenship. Accordingly, the court found that the legislature, in enacting the juvenile habitual offender statute, legitimately gave greater consideration to society's interest in being protected from criminal conduct. *Chrastka*, 83 Ill. 2d at 80.

We likewise reject the defendant's claim that the Act violates article I, section 11. The legislature obviously considered the seriousness of the offense when it enacted the Act, which applies only to Class X felonies, first degree murder and criminal sexual assault, offenses recognized to be particularly violent and dangerous to society. The legislature also weighed the rehabilitative potential of offenders by limiting the Act to those offenders who have a third serious felony conviction within a prescribed period of time. Under the legislative scheme, defendants are given the opportunity, when sentenced for their first two serious felony offenses, to present mitigating evidence and to demonstrate their rehabilitative potential. The Act may be invoked only after a defendant has twice demonstrated that conviction and imprisonment do not deter him from a life of crime. Thus, the Act unquestionably represents a careful legislative consideration of both the seriousness of the offense and the rehabilitative potential of offenders

subject to its terms. We therefore reject the defendant's claim that the Act violates article I, section 11, of the Illinois Constitution.

The defendant next argues that the Act violates the due process clauses of the State and Federal Constitutions because it creates an unconstitutional, conclusive presumption that the defendant must receive a life sentence without regard to mitigating circumstances. As the State points out, however, the only cases that the defendant cites in support of this claim set forth constitutional requirements for evidentiary presumptions used *at trial* to prove the defendant's guilt. (*E.g.,* *County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *People v. Housby* (1981), 84 Ill. 2d 415.) These cases are based upon the proposition that due process requires the State to prove every element of a crime beyond a reasonable doubt at trial. As the State aptly notes, such cases are simply not relevant here, since the State has already proved the defendant guilty beyond a reasonable doubt of his third serious offense. This Act does not violate due process principles simply because it imposes a mandatory *sentence* upon defendants who have multiple serious felony convictions. The defendant has therefore failed to establish that the Act violates the due process clauses of the State and Federal Constitutions. See *People v. Hartfield* (1985), 137 Ill. App. 3d 679.

The defendant also contends that the Act violates the eighth amendment's cruel and unusual punishment clause because it imposes a mandatory life sentence without requiring consideration of mitigating factors. This argument is foreclosed by the United States Supreme Court's recent decision in *Harmelin v. Michigan* (1991), 501 U.S. 957, 115 L. Ed. 2d 836, 111 S. Ct. 2680. In *Harmelin,* the Supreme Court rejected an eighth amendment challenge to a Michigan statute that

provided for a mandatory sentence of life imprisonment without the possibility of parole for possession of 650 or more grams of cocaine. In reaching this result, the Court rejected the argument that it was cruel and unusual to impose a mandatory sentence of such severity "without any consideration of so-called mitigating factors." (*Harmelin*, 501 U.S. at 994, 115 L. Ed. 2d at 864, 111 S. Ct. at 2701.) The Court noted that severe mandatory penalties had been employed throughout history and, thus, could not be considered unusual in the constitutional sense. The Court found that a severe sentence did not become cruel and unusual simply because it was mandatory in nature. The Court therefore held that a statute which mandates a life sentence without regard to the mitigating circumstances does not impose cruel and unusual punishment under the eighth amendment. For these same reasons, we conclude that this Act does not violate the eighth amendment. See *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (imposition of life sentence under recidivist statute upon a defendant convicted, successively, of fraudulent use of a credit card, passing a forged check and obtaining money by false pretenses did not constitute cruel and unusual punishment).

C. Separation of Powers

The defendant next argues that the Act violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) by effectively taking the sentencing function away from the judiciary and delegating it to the prosecutor. The defendant argues that the Act infringes upon the judiciary's sentencing function because it grants the State's Attorney's office unfettered discretion to decide whether a given defendant will receive a sentence of natural life imprisonment.

We initially note that it is not clear, from the

language of the Act, that the State's Attorney has any discretion to choose when to invoke the Act. Section 33B—1(a) of the Act expressly states that *"Every person* [whose felony convictions meet the eligibility requirements of the Act] *shall be adjudged an habitual criminal."* (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 33B—1(a).) The statute provides very precise guidelines for its application and does not appear to grant the State's Attorney any discretion to choose which defendants shall be sentenced under the Act. Rather, the Act, by its terms, applies to all defendants who meet the statute's criteria of three convictions for Class X felonies, first degree murder, or criminal sexual assault within a 20-year period.

The defendant argues, however, that section 33B—2 of the Act grants the prosecutor absolute discretion to determine when to invoke the Act. That section provides, in part:

"After a plea or verdict or finding of guilty and before sentence is imposed, the prosecutor *may* file with the court a verified written statement signed by the State's Attorney concerning any former conviction of an offense set forth in Section 33B—1 rendered against the defendant. The court shall then cause the defendant to be brought before it; shall inform him of the allegations of the statement so filed ***; and unless the defendant admits such conviction, the court shall hear and determine such issue, and shall make a written finding thereon." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 33B—2.)

We agree with the State that the word "may" in section 33B—2(a) can be read as simply prescribing how the prosecutor brings a defendant's prior conviction history to the court's attention. The trial judge then determines whether the defendant's convictions satisfy the requirements set forth in the Act and, if such requirements are satisfied, sentences the defendant to life imprisonment. See *People v. Withers* (1983), 115 Ill. App. 3d 1077.

Even assuming, however, that section 33B—2 per-

mits the State's Attorney to exercise discretion in determining whether or not to invoke the Act, we nevertheless reject the defendant's claim that the Act violates the separation of powers doctrine. This court upheld the constitutionality of an analogous procedure in *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531. In that case, the defendant challenged the constitutionality of section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d)), which provides that the State must first request the death sentence before it can be imposed. The *Cousins* court rejected the contention that the provision granted the judiciary's sentencing authority to the prosecutor in violation of the separation of powers doctrine. In rejecting the claim, the court observed that the State's Attorney has always enjoyed wide discretion in similar matters, including the right to decide whether to initiate any prosecution at all, to choose which of several charges shall be brought, to decide whether to charge a juvenile as an adult, and to manage the criminal litigation. (*Cousins,* 77 Ill. 2d 531; see also *People v. Bombacino* (1972), 51 Ill. 2d 17; *People v. Handley* (1972), 51 Ill. 2d 229.) We likewise do not find it constitutionally objectionable that the legislature, in the Act, may have accorded discretion to the State's Attorney to choose whether or not to seek a hearing under the Act. See *Gregg v. Georgia* (1976), 428 U.S. 153, 199, 49 L. Ed. 2d 859, 889, 96 S. Ct. 2909, 2937 ("Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution").

The power to petition the court to impose a particular sanction is not the power to sentence. Under the Act, the power to impose sentence remains with the trial judge. Accordingly, we find that the Act does not violate the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

D. Three-Readings and Single-Subject Requirements

The defendant finally argues that his life sentence must be reversed because the 1980 amendment to section 33B—1 of the Act was not validly enacted and, thus, did not become law. As previously noted, the 1980 amendment broadened the types of felony convictions that could trigger the Act to include convictions that occurred prior to 1978 and convictions from jurisdictions other than Illinois. The defendant argues that the 1980 amendment to the Act is unconstitutional, and therefore cannot be applied to him, because the General Assembly failed to comply with the procedural requirements set forth in article IV, section 8(d), of the Illinois Constitution when it enacted the amendment. Specifically, the defendant argues that the amendment was unconstitutionally enacted because: (1) the bill containing the amendment was not read by title on three different days before the House of Representatives; and (2) the bill containing the amendment was not confined to a single subject. We address each of these arguments in turn.

Public Act 81—1270 originated in the Senate as Senate Bill 1524. At its inception, the bill sought to amend the Criminal Code of 1961 to make feticide a criminal offense. (See 15 Legislative Synopsis and Digest, 81st Ill. Gen. Assem. 1, at 332-33 (1980).) After the Senate approved the bill, it was introduced in the House of Representatives. The House amended the bill a number of times. One of the amendments to the bill deleted entirely the bill's original text, pertaining to feticide, and replaced it with a paragraph amending the Criminal Code to expand the types of felonies that could be used to trigger the Habitual Criminal Act. (See 15 Legislative Synopsis and Digest, 81st Ill. Gen. Assem. 1, at 332-33 (1980).) The Speaker of the House declared the amendment "germane" to the original subject matter of the bill. A second amendment to the bill was thereafter adopted by the House, which modified another section of

the Criminal Code pertaining to residential picketing. (See 15 Legislative Synopsis and Digest, 81st Ill. Gen. Assem. 1, at 332-33 (1980).) The bill was thereafter adopted by both houses of the General Assembly, signed by the Governor, and became law on July 3, 1980.

The defendant argues that Public Act 81—1270 was not validly enacted because the General Assembly failed to comply with article IV, section 8(d), of the Constitution, which provides: "A bill shall be read by title on three different days in each house." (Ill. Const. 1970, art. IV, § 8(d).) The defendant argues that the House did not comply with this "three-readings" requirement.

The State initially responds that the three-readings requirement was suspended by a majority of the members of the House of Representatives pursuant to its rules and therefore no violation of the requirement occurred. (See *People v. Cannady* (1987), 159 Ill. App. 3d 1086.) Alternatively, the State contends that the House complied with the three-readings requirement. The State argues that the three-readings rule was satisfied because Senate Bill 1524 was read three times in the House. The State concedes that the bill was thereafter amended prior to enactment, but argues that amendments that are "germane" to the general subject matter of the bill are exempted from the three-readings requirement. (*Giebelhausen v. Daley* (1950), 407 Ill. 25, 46-47.) The State argues that both the amendment and the original bill sought to revise the Criminal Code and, thus, the amendment was germane to the subject matter of the bill. (See *People v. Gill* (1988), 169 Ill. App. 3d 1049.) The defendant responds that the amendment was not germane to the original subject matter of the bill, because the amendment enlarged the habitual criminal statute, while the original bill concerned feticide.

We need not consider the arguments raised by the parties regarding the legislature's compliance with the

three-readings requirement. We conclude that the "enrolled-bill" rule precludes this court from inquiring into the legislature's compliance with the procedural requirements for passage of bills. That rule, found in the last sentence of article IV, section 8(d), of the 1970 Constitution, provides: "The Speaker of the House of Representatives and the President of the Senate shall sign each bill that passes both houses to certify that the procedural requirements for passage have been met." Ill. Const. 1970, art. IV, § 8(d).

As the Committee on the Legislature of the Constitutional Convention explained, this provision prohibits the judiciary from invalidating statutes on the ground that the legislature failed to comply with the procedural requirements for passage of bills set forth in article IV, section 8, of the Constitution. The committee report states:

"3. *Journal Entry and Enrolled Bill Rules*—Presently [under the 1870 Constitution] Illinois has the 'journal entry' rule as distinguished from an 'enrolled bill' rule. It is proposed that Illinois adopt the 'enrolled bill' rule.

The 'journal entry' rule means that a piece of legislation can be challenged in the courts by pointing to a defect in its passage as reflected in the journal. Under this rule, a statute duely [*sic*] passed by the General Assembly and signed by the Governor may be attacked in the courts, not necessarily on its merits, but on some procedural error or technicality found in the legislative process. The 'journal entry' rule, as a result, leads to complex litigation over procedures and technicalities.

The 'enrolled bill' rule would provide that when the presiding officers of the two houses sign a bill, their signatures become *conclusive proof* that all constitutional procedures have been properly followed. The 'enrolled bill' rule would not permit a challenge to a bill on procedural or technical grounds regarding the manner of passage if the bill showed on its face that it was properly passed. Signatures by the presiding officers would, of course, constitute proof that proper procedures were followed. ***." (Emphasis added.) (6 Proceedings 1386-87.)

As the committee report explains, under the enrolled-bill rule, the signatures of the presiding officers of the House and Senate constitute conclusive proof that all constitutionally required procedures have been followed in the enactment of the bill. Whether or not a bill has been read by title on three different days in each house is a procedural matter, the determination of which was deliberately left to the presiding officers of the two houses of the General Assembly. *Fuehrmeyer v. City of Chicago* (1974), 57 Ill. 2d 193, 198.

Here, Public Act 81—1270 was certified by both the Speaker of the House and the President of the Senate and became law. Because the Act shows, on its face, that it was certified by the presiding officers of both houses, the enrolled-bill rule precludes this court from considering whether the legislature complied with the three-readings requirement set forth in article IV, section 8. *Benjamin v. Devon Bank* (1977), 68 Ill. 2d 142; *Fuehrmeyer v. City of Chicago* (1974), 57 Ill. 2d 193.

The defendant next contends that Public Act 81—1270 was not validly enacted because the legislature failed to comply with another portion of article IV, section 8(d), which provides: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." (Ill. Const. 1970, art. IV, § 8(d).) The defendant claims that Public Act 81—1270 violated this "single-subject" requirement. He argues that the subject matter of the original bill was feticide, and that subsequent amendments, pertaining to habitual criminals and residential picketing, added two unrelated subjects to the bill.

This court has recognized that the single-subject rule is a substantive, rather than a procedural, requirement for the passage of bills and, thus, is subject to judicial review. (*Benjamin v. Devon Bank* (1977), 68 Ill. 2d 142, 147.) This court has held, however, that a legislative

enactment violates the single-subject requirement only when the statute, on its face, clearly embraces more than one subject. See *Fuehrmeyer v. City of Chicago* (1974), 57 Ill. 2d 193 (examination of journals, in violation of the enrolled-bill rule, not necessary because statute, on its face, clearly violated the single-subject requirement).

In considering whether a statute embraces more than one subject, our court has recognized that the term "subject," in the constitutional sense, is comprehensive in scope and must be liberally construed. (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 582.) The single-subject rule is not a limitation on the comprehensiveness of a subject, which may be as broad as the legislature chooses, so long as the matters included have a natural and logical connection. (*People ex rel. Ogilvie v. Lewis* (1971), 49 Ill. 2d 476, 487.) The constitutional requirement is designed to prevent the joinder of incongruous and unrelated matters in one statute. (*Geja's Cafe v. Metropolitan Pier & Exposition Authority* (1992), 153 Ill. 2d 239, 258.) Hence, a statute may include all matters not inconsistent with, or foreign to, the general subject of the act. If all the provisions of an act relate to one subject, and are reasonably connected with it, there is sufficient compliance with the constitutional provision. *People ex rel. Ogilvie v. Lewis* (1971), 49 Ill. 2d 476, 487.

Applying these principles here, it is evident that Public Act 81—1270 embraces but one single subject: amendment of the Criminal Code of 1961. The original bill introduced in the Senate, all subsequent amendments to that bill, and the bill in its final form embraced this same single subject. The defendant's challenge to the Act fails because it rests upon the mistaken premise that the subject matter of the bill, as originally conceived in the Senate, was feticide. In fact, Senate Bill 1524, at its inception, was meant to amend the Criminal Code;

the bill in its final form was similarly designed to alter the Criminal Code. (See *People v. Gill* (1988), 169 Ill. App. 3d 1049, 1056-57.) Accordingly, we reject the defendant's claim that the 1980 amendment to the Act violates the constitutionally mandated single-subject rule.

## III. CONCLUSION

For the foregoing reasons we reject the defendant's constitutional challenges to the Habitual Criminal Act. We affirm the judgment of the appellate court, which affirmed the defendant's conviction and sentence of mandatory life imprisonment.

*Affirmed.*

JUSTICE HEIPLE, concurring in part and dissenting in part:

The Illinois Constitution sets forth the mechanism for enacting a bill. (Ill. Const. 1970, art. IV, § 8.) The constitution requires, in part, that a bill must be read by title on three different days in both the House and the Senate; that no bill shall become law unless it receives a majority vote in both houses; and that a bill shall be confined to one subject. (Ill. Const. 1970, art. IV, § 8.) Article IV, section 8, concludes by requiring the Speaker of the House and the President of the Senate to sign each bill that passes both houses to certify that the constitutional requirements for passage have been met.

From the proceedings of the Illinois Constitutional Convention it is apparent that at least some of the convention delegates believed and intended that if the Speaker of the House and the President of the Senate certified the passage of a bill, no court could inquire into the regularity of the bill's passage or the compliance with constitutional mandates. (See *Benjamin v. Devon Bank* (1977), 68 Ill. 2d 142, 145, quoting 6 Record of Proceedings, Sixth Illinois Constitutional Convention

1386-87.) It was also assumed, however, that the legislature would police itself. (See 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2881.) A more extensive discussion of this issue is set forth in *Geja's Cafe v. Metropolitan Pier & Exposition Authority* (1992), 153 Ill. 2d 239, 258-60.

Previously, in *Fuehrmeyer* this court adopted the so-called "enrolled bill" doctrine and endorsed the proposition that the signatures of the Speaker of the House and the President of the Senate on a bill precluded any judicial inquiry into whether the procedural requirements of the Illinois Constitution had been met. *Geja's* raised the question of whether the validity of the General Assembly's *carte blanche* certification power should be allowed to continue. Today, the majority has proclaimed that "the enrolled-bill rule precludes this court from considering whether the legislature complied with the three-readings requirement set forth in article IV, section 8." 165 Ill. 2d at 254.

I respectfully dissent. The interpretation of a constitutional provision depends, in the first instance, on the plain meaning of its language. Next, it depends on the common understanding of the citizens who, by ratifying the constitution, have given it life. A court looks to the debates of the convention delegates only when a constitutional provision is ambiguous. (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 492-93.) There is no ambiguity in the provision requiring the legislature to read a bill on three different days in each house, the provision that a bill receive a majority vote in each house, or the provision requiring the Speaker of the House and the President of the Senate to sign each bill to certify that the procedural requirements for passage have been met.

If it were deemed desirable to foreclose inquiries into the regularity of the passage of bills, language sim-

ilar to the enrolled-bill doctrine could have been included within the constitution. There is no such language. Moreover, the Illinois Constitution was adopted at a referendum. It did not become the law of the State by either the discussions of the delegates or by their votes. The constitutional convention merely submitted the document to the public for a vote. There is no way that a voter could interpret the language of the constitution to mean that procedural requirements for the passage of a bill could be overridden by the signatures of two State officers. In truth, the signatures of the officers are merely *prima facie* evidence that the General Assembly has abided by the requirements of the constitution. In other words, it raises a rebuttable presumption that the requirements for passage have been met.

A literal adherence to this so-called enrolled-bill doctrine means that a bill need never be read or presented in either house, need never receive a majority vote, and need never even be voted on. Two people, the Speaker of the House and the President of the Senate, need merely sign and certify a bill and, unless vetoed by the Governor pursuant to article IV, section 9, the bill becomes *ipso facto* the law of Illinois. Contrary to today's ruling, I believe that the constitutional requirements for the enactment of a bill should be followed and enforced. While separation of powers is a valid doctrine and a presumption of legislative regularity is its proper corollary, this court should reserve the right of review to ensure the General Assembly's compliance with constitutional mandates.

Accordingly, I respectfully dissent from that portion of the majority opinion which adopts and applies the enrolled-bill doctrine.