THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOWARD D. STARTZ, Defendant-Appellant.

Third District    Nos. 3—99—0068 through 3—99—0075, 3—99—0298 cons.

Opinion filed April 20, 2000.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

The defendant, Howard Startz, appeals from an order of the circuit court of Will County. In a consolidated hearing, the defendant pled guilty to theft (720 ILCS 5/16—1 (West 1996)) and admitted the allegations in the State's petitions to revoke probation in eight other cases. The trial court sentenced the defendant to four consecutive three-year terms of imprisonment. On appeal, the defendant argues: (1) the trial court erred in imposing consecutive terms of imprisonment because at the time it accepted his pleas and admissions, the court did not admonish him that he was eligible for consecutive sentences; and (2) this cause should be reversed and remanded for a fitness hearing because Public Act 89—689 (Pub. Act 89—689, eff. December 31, 1996), which modified the requirements for holding a fitness hearing based on a defendant's use of psychotropic medication, violates the single subject rule. We dismiss this cause in part for lack of jurisdiction, and we otherwise affirm.

## I. FACTS

The record reflects that in 1995 the defendant pled guilty in cases 95—CF—1708 and 95—CF—1709 to seven counts of forgery (720 ILCS 5/17—3 (West 1994)) and was sentenced to concurrent terms of 30 months' probation. In 1996, he was charged with three counts of retail theft and one count of theft. 720 ILCS 5/16A—3, 16—1 (West 1996). The State then filed a petition to revoke his probation for the 1995 cases based on some of the 1996 charges. In August 1996, the defendant was charged with two additional counts of retail theft. In October 1996, the defendant admitted the allegations in the State's petition to

revoke his probation and pled guilty to the six 1996 charges. The court sentenced him to 60 months' Treatment Alternatives to Street Crime (TASC) probation on all the charges.

Less than a year later, the defendant was charged with another count of theft. The State filed petitions to revoke the defendant's TASC probation in the eight other cases (the six 1996 cases and the two 1995 cases). Subsequently, the court learned that the defendant had been involved in an automobile accident and was taking psychotropic medication. Therefore, before proceeding on the petitions to revoke and the new charge, the trial court asked the defendant if the medication that he was taking affected his ability to understand the proceedings. The defendant said that the medication did not affect him. On March 19, 1998, he admitted the allegations in the State's petition to revoke probation in the first eight cases and pled guilty in the ninth. On April 29, 1998, he was sentenced on all the cases to four consecutive three-year terms of imprisonment.

On May 27, 1998, the defendant filed, with respect to all nine cases, a *pro se* motion for reduction of sentence. On June 29, 1998, he filed a *pro se* motion to withdraw his guilty plea and vacate sentence. On December 15, 1998, the trial court heard and denied the motion to reconsider sentence. On January 26, 1999, the trial court heard the defendant's motion to withdraw his plea. The defendant argued that a fitness hearing should have been held after his automobile accident because he was taking psychotropic medication. In denying the defendant's motion to withdraw his plea, the court declared that, in order to be entitled to a fitness hearing, more was required than simply a showing that the accused had been taking psychotropic medication. On February 1, 1999, the defendant filed his notice of appeal.

## II. ANALYSIS

### Consecutive Sentences

On appeal, the defendant first argues that the trial court erred in imposing consecutive terms of imprisonment on his nine cases because it did not admonish him that he was eligible for consecutive sentences when it accepted his pleas and admissions. In response, the State initially argues that this court does not have jurisdiction to consider the defendant's claims in the first eight cases because he did not file a timely notice of appeal from the denial of his motion to reconsider sentence.

■ It is well settled that the timely filing of a notice of appeal is jurisdictional. *People v. Blanchette*, 182 Ill. App. 3d 396, 538 N.E.2d 237 (1989). A notice of appeal is timely filed if it is filed within 30 days of the final judgment of the case, or within 30 days of a decision on a

timely motion directed against the judgment. 134 Ill. 2d R. 606(b). Final judgment occurs in a criminal case when the defendant is sentenced. *People v. Woolsey*, 139 Ill. 2d 157, 564 N.E.2d 764 (1990).

■ Here, the defendant's motion to reduce sentence was timely filed and was decided on December 15, 1998. He did not file a notice of appeal until February 1, 1999. Since his notice of appeal was filed more than 30 days after the decision on the motion, we do not have jurisdiction to hear the first eight cases.

The defendant argues that we have jurisdiction over these cases because: (1) his *pro se* motion to withdraw his guilty plea should be construed as a motion to withdraw his plea in the ninth case and a motion to withdraw his admissions in the other eight cases; and (2) that motion was timely because it was a "transformation or supplement" to the motion to reduce sentence.

Even if we liberally construe the defendant's *pro se* motion to withdraw his guilty plea as a motion to withdraw his plea and admissions, we would not have jurisdiction. The record reflects that the defendant was sentenced on April 29, 1998. The motion to withdraw the guilty plea was not filed until June 29, 1998. Therefore, the motion was untimely and cannot serve as a basis for extending the jurisdictional period. See *People v. Combs*, 197 Ill. App. 3d 758, 555 N.E.2d 66 (1990). Further, the motion to withdraw the plea cannot be construed as a "transformation or supplement" to the motion to reduce sentence. Both motions request different relief and allege distinct allegations.

■ Because the defendant did not file a timely notice of appeal from the trial court's denial of his motion to reduce sentence, we do not have jurisdiction over his first eight cases. We shall now address the defendant's ninth case, where he pled guilty to theft.[1]

The defendant argues that the trial court erred in sentencing him to a consecutive sentence because it failed to admonish him that he was eligible for such a sentence before he pled guilty.

■ Supreme Court Rule 402(a)(2) expressly states that a court shall not accept a plea of guilty without first advising the defendant of the sentencing consequences, including the penalty to which the defendant may be subjected because of consecutive sentences. 177 Ill. 2d.

---

[1]Although we have noted that the motion to withdraw the guilty plea was untimely, the trial court failed to fulfill its duty under Supreme Court Rule 605(b) to admonish the defendant of the 30-day time limit for filing the motion. 145 Ill. 2d R. 605(b). Since the trial court failed to properly admonish the defendant with respect to case No. 3—99—0074 (No. 97—CF—3180), his late filing does not divest this court of jurisdiction of that appeal. See, *e.g., People v. Foster*, 171 Ill. 2d 469, 665 N.E.2d 823 (1996).

R. 402(a)(2); *People v. McCracken*, 237 Ill. App. 3d 519, 604 N.E.2d 1104 (1992). A court's failure to state the penalty to which a defendant may be subjected renders a defendant's plea involuntary. *People v. Clark*, 276 Ill. App. 3d 1002, 659 N.E.2d 421 (1995). Whether reversal is required depends on whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment. *People v. Davis*, 145 Ill. 2d 240, 582 N.E.2d 714 (1991).

■ Here, the defendant cannot challenge the admonishments he received before he pled guilty to theft in the ninth case. When he filed a motion to withdraw his guilty plea, he never addressed the issue of the trial court's failure to properly admonish him. Under Supreme Court Rule 604(d), any issue not raised in the motion to withdraw the plea of guilty is waived on appeal. 145 Ill. 2d R. 604(d). Further, a review of the plea proceedings under the plain error doctrine would be improper because the trial court made no misleading statements during the plea proceedings. See *People v. Clark*, 276 Ill. App. 3d 1002, 659 N.E.2d 421 (1995). When the judge sentenced the defendant to TASC probation at the sentencing hearing that preceded this case, the judge warned him that he could receive up to 21 years for the first eight cases. He ended up receiving 12 years' imprisonment for all nine cases. For these reasons, we decline to review the defendant's sentence under the plain error doctrine.

## Single Subject Rule

The defendant argues that Public Act 89—689 (the Act), which modified the requirement for holding a fitness hearing based upon psychotropic medication, is unconstitutional because it violates the single subject rule. Pub. Act 89—689, eff. December 31, 1996 (amending 725 ILCS 5/104—21 (West Supp. 1997)). Therefore, he argues, he is subject to the law in effect prior to the improper enactment of the Act. 725 ILCS 5/104—21 (West 1996). The defendant further notes that this prior law was held to be unconstitutional because it violated the single subject rule. *Johnson v. Edgar*, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997). For that reason, the defendant contends, we must apply the law in effect prior to the law that was struck down in *Johnson v. Edgar*. That earlier version *required* a fitness hearing if there was any evidence at trial that the defendant was taking psychotropic medication. See 725 ILCS 5/104—21 (West 1994).

## Contents of Public Act 89—689

The contents of Public Act 89—689 may be summarized as follows: (1) section 5 amended the Criminal Code of 1961 by expanding the definitions of "escape" and "aiding escape" (720 ILCS 5/31—6, 31—7 (West Supp. 1997 & West 1998)); (2) section 20 amended the

Unified Code of Corrections by providing that unclaimed accounts of committed persons shall be deposited in the general revenue fund and that unauthorized currency found in the possession of a committed person shall be confiscated (730 ILCS 5/3—4—3 (West Supp. 1997)); (3) section 35 amended the Court of Claims Act by providing for a cost of living increase for persons who unjustly spent time in prison (705 ILCS 505/8 (West Supp. 1997)); (4) section 55 amended the Humane Care for Animals Act to provide that it is a criminal offense to maliciously harm a guide dog (510 ILCS 70/7.15, 16 (West 1998)); (5) section 65 amended the Unified Code of Corrections by adding a reason for the imposition of an extended-term sentence (730 ILCS 5/5—5—3.2 (West Supp. 1997)); (6) section 70 provided limited immunity for persons who obtain blood or urine for evidentiary purposes under the Illinois Vehicle Code upon the request of a law enforcement officer (625 ILCS 5/11—500.1 (West 1998)); (7) section 75 made changes to the county impact incarceration program (55 ILCS 5/3—6039 (West Supp. 1997)); (8) section 80 amended the Juvenile Court Act of 1987 to add another type of authorized disposition for wards of the court (705 ILCS 405/5—23 (West Supp. 1997)); (9) section 85 amended the Criminal Identification Act (20 ILCS 2630/5 (West 1998)); (10) section 90 amended the psychotropic drug provision of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21 (West Supp. 1997)); (11) section 95 provided for competitive bidding for services for the state appellate defender (725 ILCS 105/10.5 (West Supp. 1997)); (12) section 100 reenacted a statutory provision establishing procedures for the prisoner review board and amended the restitution provisions of the Unified Code of Corrections (730 ILCS 5/3—3—5 (West Supp. 1997)); (13) section 105 enacted a new provision in the Code of Criminal Procedure allowing for the admissibility of prior statements when a witness refuses to testify (725 ILCS 5/115—10.2 (West 1998)); (14) section 110 expanded the definition of a hate crime (720 ILCS 5/12—7.1 (West 1998)); (15) section 115 amended the factors in aggravation for sentencing provisions of the Unified Code of Corrections (730 ILCS 5/5—5—3.2 (West Supp. 1997)); (16) section 120 changed the penalty provision for the offense of solicitation of murder; (720 ILCS 5/8—1.1 (West 1998)); (17) section 125 authorized the Department of Corrections to develop a program for tracing inmates involved in gang affiliation, to report to the governor regarding gangs, and to monitor gang activity (730 ILCS 5/3—2—2 (West Supp. 1997)); (18) section 130 changed the reporting date for the Truth-in-Sentencing Commission (730 ILCS 5/3—6—3.1 (West Supp. 1997)); and (19) section 135 required the Department of Corrections to prohibit the use of curtains on prisoners' cells (730 ILCS 5/3—7—2 (West Supp. 1997)).

The defendant's argument that the Act in question violates the single subject rule is three-pronged. First, he argues that the subject of the Act, "Crimes and Corrections—General Amendments," is too broad to satisfy the strictures of the single subject rule. Second, he contends that even if the subject is sufficiently narrow, the Act contains provisions that are unrelated to the subject. Specifically, he refers to section 70, which enacted a new statute regarding civil immunity from damages for hospital personnel drawing blood or urine at the behest of a police officer. Third, he contends that the range of topics is broad and the topics in the Act have no natural and logical connection to each other.

We initially note all statutes carry a strong presumption of constitutionality. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 701 N.E.2d 1056 (1998). The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation. *Russell*, 183 Ill. 2d 434, 701 N.E.2d 1056.

■ A law violates the single subject rule only when the statute, on its face, embraces more than one subject. *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995). Subjects as broad as an "amendment of the Criminal Code of 1961" and "implementation of the state budget for the 1996 fiscal year" have been held to satisfy the single subject rule. *Dunigan*, 165 Ill. 2d at 255; *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 352, 718 N.E.2d 191, 198 (1999). Neither the number of provisions in an act nor the fact that the act amends a number of acts already in effect is determinative of the act's compliance with the single subject rule. *Arangold*, 187 Ill. 2d 341, 718 N.E.2d 191. The proper test for determining a single subject violation is whether the matters included within the enactment have a natural and logical connection to a *single subject*; they do not need to have such a connection to each other. See *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995) (upheld an enactment with provisions pertaining to feticide, habitual criminals and residential picketing because all those matters had a natural and logical connection to the subject of criminal law).

■ The defendant claims that the Act, entitled "Crimes and Corrections—General Amendments," and labeled "An Act in relation to public safety" is too broad a topic to satisfy the strictures of the single subject rule. However, we note that the title of the Act is "An Act in relation to public safety," and not "Crimes and Corrections—General Amendments." Pub. Act 89—689, eff. December 31, 1996. The topic "Crimes and Corrections—General Amendments" was a label put on the Act by a private publisher. Therefore, we shall not address that

label in relation to the single subject rule. See Pub. Act 89—689, eff. December 31, 1996.

Here, the Act's title indicates that its subject is public safety. Historically, issues of public safety have been addressed by the criminal justice system. The subject of criminal law is not too broad a topic to violate the single subject rule. See *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995). So, too, we hold that the subject of public safety is not so broad that it violates the single subject rule.

Next, the defendant contends that Public Act 89—689 (Pub. Act 89—689, eff. December 31, 1996) contains provisions that are unrelated to "Crimes and Corrections—General Amendments." We need not address this point because, as we have noted, the title of the Act is not "Crimes and Corrections—General Amendments." However, we note that the section that the defendant refers to, section 70, does relate to public safety. That section provides that a person who in good faith withdraws blood or collects urine for evidentiary purposes at the request of a law enforcement officer is not civilly liable for damages unless the act is performed in a willful and wanton manner. See 625 ILCS 5/11—500.1 (West 1998). That section is related to the public safety because it concerns the collection of evidence for criminal cases.

Our review of the remaining sections in the Act shows that they also all relate to public safety. Finally, the defendant's contention that several provisions in the Act do not relate to each other must also fail. Our supreme court has recently reiterated the rule that different provisions in an Act need not naturally and logically connect to each other. See *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 718 N.E.2d 191 (1999). Therefore, we hold that the Act does not violate the single subject rule.

## III. CONCLUSION

In sum, we dismiss the defendant's first eight cases from this appeal for lack of jurisdiction. We uphold the defendant's guilty plea and sentence in case No. 3—99—0074 (No. 97—CF—0068). Finally, we hold that Public Act 89—689 does not violate the single subject rule. Pub. Act 89—689, eff. December 31, 1996. Accordingly, the judgment of the circuit court of Will County is dismissed in part and affirmed in part.

Dismissed in part; affirmed in part.

LYTTON and HOLDRIDGE, JJ., concur.