2023 IL App (2d) 200745-U
No. 2-20-0745
Order filed February 3, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11-CF-2225 |
| CHARLES FLEMING, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not err in granting the State's motion to dismiss the defendant's amended postconviction petition because the defendant failed to make a substantial showing that he received ineffective or unreasonable assistance of counsel, that his right to counsel of choice was violated, or that his sentence was unconstitutional.

¶ 2     The defendant, Charles Fleming, appeals from the second stage dismissal of his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). The defendant argues he made a substantial showing that he received ineffective assistance of trial and appellate counsel, postconviction counsel did not provide reasonable assistance, his right to counsel of choice was violated, and his sentence was unconstitutional. We affirm.

¶ 3                                     I.  BACKGROUND

¶ 4      On October 3, 2011, the defendant was charged in a 10-count indictment with four counts of aggravated kidnapping (720 ILCS 5/10-2(a)(6), 10-2(a)(7) (West 2010)), two counts of armed violence (720 ILCS 5/33A-2(a), 33A-2(b) (West 2010)), and four counts of armed robbery (720 ILCS 5/18-2(a)(2), 18-2(a)(3) (West 2010)).  The charges arose from an incident that occurred at a Little Caesars restaurant in Elgin on October 2, 2011, when the defendant held two employees at gun point and robbed the restaurant.  On October 26, 2011, a public defender was appointed to represent the defendant.  The case was set for jury trial on November 13, 2012, but was continued by agreement several times.  On May 20, 2013, after the public defender moved to continue the trial and the State objected, the trial court granted the motion but stated that the new trial date of July 15, 2013, was a "set in stone trial date."

¶ 5      On July 11, 2013, the trial court conducted a final pretrial conference.  The public defender stated she was ready to proceed to trial but informed the trial court that the defendant had told her he wanted to hire private counsel.  The defendant stated in court that his family was ready to hire private counsel and was deciding between two attorneys.  The trial court denied the defendant's motion for a continuance and stated that the trial was set to start on July 15, 2013.

¶ 6      On the date of trial, the defendant renewed his motion to continue the jury trial to retain private counsel.  The defendant stated that his family was ready to hire one of three attorneys, but they had not decided who to choose.  The trial court denied the motion to continue, noting that private counsel was not in court and ready to proceed on the defendant's behalf.

¶ 7      The evidence at trial revealed that, on October 2, 2011, a Little Caesars restaurant in Elgin closed at 10 p.m.  By approximately 11 p.m., two employees, Aldo Mendoza and Esmaerlda Quiroz, finished cleaning the restaurant and were preparing to leave.  Mendoza, with Quiroz

following, opened the door to exit the restaurant when the defendant confronted the two with a gun. The defendant told them to go back inside the restaurant and he followed. The defendant locked the door and demanded money from the two employees and from the restaurant's safes. There were three safes positioned under the counter register. Mendoza opened one small safe, but the other two were locked. The small safe contained approximately $200-$300, which Mendoza gave to the defendant. When the defendant demanded the money from the other two safes, Mendoza stated several times that they were time-locked and could not be opened until the next morning. As a result of Mendoza's inability to open the safes, the defendant struck Mendoza numerous times, causing him major bruising and injuries. The defendant also forced Mendoza to use multiple objects to try to break open the safes, such as a scraper and an electrical drill. When these attempts failed, the defendant used the objects to repeatedly strike Mendoza.

¶ 8     Subsequently, while constantly pointing a gun at the victims, the defendant led Mendoza and Quiroz to the bathroom and placed a plastic bag around Mendoza's head. The bathroom was located in the back of the restaurant, not visible to anyone passing the restaurant. He pointed the gun at Mendoza's head and demanded money, but to no avail. He then took both victims' cell phones and threw them in the garbage. When his demands for money failed yet again, he led the victims back to the area where the safes were located. The victims testified that while Mendoza was attempting to open the safes, the defendant pointed the gun at Mendoza and then fired at the ground. Mendoza testified that the defendant fired one shot at the ground but Quiroz testified that the defendant fired two shots. Mendoza also testified that the People's Exhibit No. 1, a black revolver, looked like the one that was used during the incident. On cross-examination, Mendoza admitted that when he spoke to the police on the night of the incident, he told them the revolver was silver.

¶ 9    At approximately 2:30 a.m., the defendant told Quiroz at gun-point not to move and then went into the back of the restaurant. After a few minutes had passed, Quiroz gestured to Mendoza that the defendant may have fallen asleep. Mendoza ran out of the restaurant in order to call the police. When the police arrived, the defendant awoke and attempted to escape. The police caught the defendant and found $346 in his pockets, $160 in his wallet, and a black .38 caliber revolver.

¶ 10    At trial, the victims testified that, shortly after the defendant was apprehended, they went back to the restaurant and identified the defendant as the offender. They both testified that during the encounter they believed they were never going to leave the restaurant alive.

¶ 11    An Elgin police officer testified that, after the defendant was apprehended, the defendant was read his *Miranda* rights and made a statement. The defendant stated that, when he went into the Little Caesars to get some pizza, he was confronted by two armed men who knocked him unconscious as they tried to rob him. The defendant stated that when he regained consciousness, he was in possession of a gun and he heard police outside. The defendant ran from the restaurant because he was scared.

¶ 12    At trial, the defendant testified that he went to the Little Caesars on the night of the incident to get some pizza. He parked his car in the lot and left it running. He had money in his pocket and wallet. When he entered the restaurant, he was confronted by a heavyset man wearing a mask and holding a gun. The man told him to put his hands up and walk to the back of the restaurant. While he was walking, he noticed that there was also another man with a gun in the restaurant. When they reached the back, the first gunman told him to "give it up, everything you got." The defendant then tried to wrestle the gun away from the man. In the process, he was knocked unconscious. He believed the man hit him over the head with the gun or his fist. When he woke up, he had a glove in his hand and his side hurt. He believed he must have wrestled the glove off

of his attacker. He heard someone yell, "police." The defendant said that he ran out the door because there were warrants pending for his arrest. The defendant denied robbing Quiroz and Mendoza or holding them inside the restaurant against their will.

¶ 13 At the close of the trial, the jury found the defendant guilty of two counts of aggravated kidnapping, two counts of aggravated robbery, and one count of armed violence. Based on two prior Class X convictions for armed robbery, the trial court sentenced the defendant to natural life in prison under the Habitual Criminal Act (730 ILCS 5/5-4.5-95(a) (West 2010)). Following the denial of his motion for judgment notwithstanding the verdict, the defendant filed a timely notice of appeal.

¶ 14 On direct appeal, the defendant argued that his convictions for aggravated kidnapping should be reversed because the State did not provide sufficient evidence to prove that he "secretly confined" the victims and because the kidnapping was merely incidental to the aggravated robbery. This court found these contentions to be without merit and affirmed the defendant's conviction and sentence. *People v. Fleming*, 2015 IL App (2d) 131161-U.

¶ 15 On January 22, 2016, the defendant filed a *pro se* postconviction petition. The trial court advanced the petition to the second stage and a private attorney filed an appearance to represent the defendant. On October 23, 2019, defense counsel filed a Rule 651(c) certificate and an amended post-conviction petition. The amended petition raised claims related to ineffective assistance of trial and appellate counsel, a violation of the defendant's sixth amendment right to counsel, and the unconstitutionality of the Habitual Criminal Act.

¶ 16 On January 16, 2020, the State filed a motion to dismiss the amended petition. On August 21, 2020, defense counsel stated, in court, that he had spoken with the defendant and that the defendant agreed to waive the filing of an answer to the motion to dismiss. The defendant also

agreed to waive arguments on the motion and waive his presence for any proceedings on the motion to dismiss. On November 17, 2020, the trial court entered an order granting the State's motion to dismiss the amended petition. The defendant filed a timely notice of appeal from this order.

¶ 17    Counsel was subsequently appointed to represent the defendant. On September 2, 2021, the defendant's appointed appellate counsel filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). On March 30, 2022, this court granted counsel's motion to withdraw and allowed the defendant to proceed *pro se*.

¶ 18                  II. ANALYSIS

¶ 19    On appeal, the defendant argues *pro se* that the trial court erred in dismissing his amended petition at the second stage because he made a substantial showing that (1) he received ineffective assistance of trial counsel, appellate counsel, and postconviction counsel; (2) he was denied his sixth amendment right to counsel of choice; and (3) the basis for his sentence, the Habitual Criminal Act, is unconstitutional.

¶ 20    The Act allows a criminal defendant to raise a claim that his conviction resulted from a substantial violation of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018). The Act establishes a three-stage process for the adjudication of a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss the petition. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2018). If the defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the trial court conducts an evidentiary hearing. *Id.* § 122-6.

¶ 21    At the second stage of proceedings on a postconviction petition, dismissal is warranted "only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005). We accept as true all factual allegations not positively rebutted by the record. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). We review *de novo* the dismissal of a postconviction petition without an evidentiary hearing. *Hall*, 217 Ill. 2d at 334.

¶ 22                    A. Ineffective Assistance of Trial and Appellate Counsel

¶ 23    We first address the defendant's argument that he received ineffective assistance of both trial and appellate counsel. To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In addition, a defendant must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* A defendant must satisfy both components of the *Strickland* test, and the failure to establish either prong is fatal to a claim of ineffective assistance. *Id.* at 687. The decision of whether and how to conduct a cross-examination is generally a matter of trial strategy, which cannot support a claim of ineffective assistance of counsel. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 34.

¶ 24    The defendant first argues that trial counsel was ineffective in failing to cross-examine Mendoza about his description of the handgun used during the robbery. The record does not support this assertion. On direct examination, Mendoza identified a black revolver as the gun used during the offense. On cross-examination, trial counsel elicited that, immediately following the offense, Mendoza told the police that the revolver used during the incident was silver. Further,

while arguing a motion for a directed verdict, trial counsel noted that, while the gun recovered at the scene was black, Mendoza had identified the gun as silver immediately following the incident. The record thus demonstrates that trial counsel effectively elicited testimony and made arguments regarding Mendoza's different descriptions of the gun used during the offense.

¶ 25 The defendant next argues that trial counsel was ineffective in failing to cross-examine Quiroz regarding her statement that two shots were fired during the offense and thereby draw attention to Mendoza's conflicting testimony that only one shot was fired. The record indicates that Quiroz was not cross-examined regarding the number of shots fired during the offense. However, in closing argument, trial counsel argued, consistent with the defendant's testimony, that there was no gun fired inside the restaurant that night. Trial counsel noted that there was no gunshot residue found on the gloves that were recovered, the police did not test the defendant's clothing for gunshot residue, there were no fingerprints on the recovered weapon, and no bullets were recovered at the scene. Trial counsel argued that there were no bullets because a gun was never fired. This argument was consistent with the defendant's testimony that a weapon was never fired. Establishing an inconsistency between one shot versus two shots would have been inconsistent with defendant's assertion that no shots were fired and therefore it was a reasonable strategic decision not to raise the issue on cross-examination. Accordingly, the failure to cross-examine Quiroz to establish an inconsistency as to whether there were one or two gunshots that night does not make a substantial showing of a constitutional violation in light of the defendant's argument at trial that there was no gunfire.

¶ 26 The defendant also argues that trial counsel was ineffective in failing to cross-examine Mendoza and Quiroz about alleged inconsistencies in their testimony as to the nature and extent of the injuries suffered by Mendoza. This argument is without merit because the testimony was

not inconsistent. Mendoza testified that the offender struck him on the top of his head, on both sides of his face, the back of his neck, and along the left side of his back. He used his left arm to try to protect himself, which the defendant also struck. Quiroz's testimony that Mendoza was hit on his back and face was not inconsistent. Moreover, continuing to cross-examine about the nature and extent of Mendoza's injuries ran the risk of yielding unfavorable information. There is no basis for this court to conclude that counsel's decision to refrain from focusing on Mendoza's injuries was objectively unreasonable.

¶ 27    Finally, the defendant argues that trial counsel was ineffective in failing to cross examine Mendoza and Quiroz as to whether they were secretly confined. This argument is also without merit. On direct appeal this court concluded that the evidence was sufficient to prove the element of secret confinement. *Fleming*, 2015 IL App (2d) 131151-U, ¶ 14. We noted that, during the offense, the defendant locked the restaurant doors, threw away the victim's cell phones, told the victims they could not leave, and held the victims in places not visible to the public—behind the counter, in the bathroom, and away from any windows. *Id.* In this appeal, the defendant does not argue what exactly could have been elicited on cross-examination that would have negated or disproved the element of secret confinement. The defendant has thus failed to make a substantial showing that trial counsel was ineffective.

¶ 28    Accordingly, because the defendant failed to make a substantial showing of ineffective assistance of trial counsel, the defendant's argument that appellate counsel was ineffective, in failing to raise claims of trial counsel's ineffectiveness, necessarily fails.

¶ 29             B. Unreasonable Assistance of Post-Conviction Counsel

¶ 30    The defendant argues that postconviction counsel was unreasonable in filing an insufficient Rule 651(c) certificate, filing an insufficient amended petition for postconviction relief, and waiving the filing of an answer to, and argument on, the State's motion to dismiss.

¶ 31    Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel at the second and third stages of postconviction proceedings. *People v. Johnson*, 2018 IL 122227, ¶ 16. That right is not limited to appointed counsel as "[p]rivately retained attorneys must also provide a reasonable level of assistance." *Id.*; see also *People v. Cotto*, 2016 IL 119006, ¶ 41 (both appointed and retained postconviction counsel must provide a reasonable level of assistance to postconviction defendants at second-stage proceedings).

¶ 32    To ensure a reasonable level of assistance, Rule 651(c) imposes three duties on postconviction counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007); *People v. Richmond*, 188 Ill. 2d 376, 381 (1999). Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations; (2) examined the record of the trial proceedings; and (3) made any amendments to the filed *pro se* petitions necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. "Under Rule 651(c), postconviction counsel has an obligation to present a defendant's postconviction claims in the appropriate legal form, and the failure to do so constitutes unreasonable assistance." *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18.

¶ 33    To establish unreasonable assistance, a defendant is not required to make a positive showing that his counsel's failure to comply with Rule 651(c) caused prejudice. *Id.* If postconviction counsel does not comply with Rule 651(c), the case should be remanded regardless of whether the claims in a *pro se* or amended postconviction petition have any merit. *People v.*

*Suarez*, 224 Ill. 2d 37, 47 (2007). Substantial compliance with Rule 651(c) is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on motion of the State, is *de novo*. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 34    In the present case, the defendant did not make a substantial showing that postconviction counsel's performance was unreasonable. Postconviction counsel filed a certificate indicating his compliance with Rule 651(c). Where counsel files a Rule 651(c) certificate, there is a presumption that counsel provided reasonable assistance and the defendant has the burden of overcoming that presumption. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 25. The defendant's arguments fail to overcome this presumption.

¶ 35    The defendant argues that postconviction counsel was unreasonable in failing to amend his *pro se* postconviction petition to include a properly notarized affidavit from the defendant. However, this is not a proper basis to reverse the second stage dismissal of the defendant's amended petition. This court has held that "[o]nce the State moved to dismiss on the merits and did not challenge the alleged procedural defects, and once the trial court conducted a hearing, during which neither party raised the alleged procedural defects, and presented its ruling based on the merits, the purported notarization and certification issues became moot." *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 27.

¶ 36    The defendant next argues that postconviction counsel was unreasonable in failing to make any amendments to his *pro se* petition. However, it is not necessary for postconviction counsel to amend a petition if the amendment "would only further a frivolous or patently nonmeritorious claim." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). "An attorney *** who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of

defendant." *Id.* Here, postconviction counsel filed an amended petition. While the defendant's *pro se* petition was 49 pages long, the amended petition was 6 pages long. Postconviction counsel streamlined the defendant's claims and placed them in a more readable format. Although the defendant argues that the amended petition was insufficient, the defendant fails to identify any arguments that postconviction counsel should have included or explain why they would have had any merit. The defendant has thus failed to overcome the presumption that postconviction counsel provided reasonable assistance.

¶ 37    Finally, the defendant argues that postconviction counsel was unreasonable in not filing an answer to the State's motion to dismiss, waiving the defendant's presence in court, and waiving oral argument on the motion to dismiss. However, the defendant does not explain what should have been raised in an answer, what would have been different had he been present at the proceedings, or what meritorious arguments could have been presented that could have resulted in a denial of the State's motion to dismiss. As such, the defendant again fails to overcome the presumption that postconviction counsel provided reasonable assistance.

¶ 38                    C. Right to Counsel of Choice

¶ 39    The defendant next argues that the trial court violated his right to counsel of choice when it denied his motion to continue, prior to the start of trial, so that he could hire private counsel. A defendant in a criminal matter has a constitutional right to the assistance of counsel under the sixth amendment to the United States Constitution as made applicable to the states via the fourteenth amendment. U.S. Const., amends. VI, XIV; Ill. Const 1970, art. I, § 8. That right includes the right to counsel of the defendant's choice (*People v. Friedman*, 79 Ill. 2d 341, 349 (1980)), and it has been regarded as the root meaning of the constitutional guarantee in the sixth amendment

(*People v. Tucker*, 382 Ill. App. 3d 916, 919 (2008) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006))).

¶ 40    Nonetheless, the right to substitute counsel is not absolute, and the trial court may deny a defendant's request to substitute counsel if the substitution of counsel " 'would unduly prejudice the other party or interfere with the administration of justice.' " *People v. McNeil*, 53 Ill. 2d 187, 197 (1972) (quoting *People v. Mueller*, 2 Ill. 2d 311, 316 (1954)). It is well settled that a defendant's right to counsel of choice must be measured against the trial court's interest in trying the case with diligence and the orderly process of judicial administration. *People v. Brisco*, 2012 IL App (1st) 101612, ¶ 41; *People v. Curry*, 2013 IL App (4th) 120724, ¶ 48.

¶ 41    We review the trial court's decision on a motion to substitute counsel for an abuse of discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). A trial court does not abuse its discretion in denying a motion to substitute counsel in the absence of ready and willing substitute counsel. *People v. Ramsey*, 2018 IL App (2d) 151071, ¶ 25. If new counsel is specifically identified and is ready, willing, and able to enter an unconditional appearance, the trial court should grant the motion. *Id.* However, if any of those requirements are lacking, the denial of a motion to substitute counsel is not an abuse of discretion. *Id.*

¶ 42    In the present case, the jury trial had been continued several times by agreement of the parties. Four days prior to the start of trial, a date the trial court indicated was "set in stone," the defendant requested another continuance, this time to secure private counsel. The request was denied. On the day of trial, the defendant renewed his motion to continue to the jury trial so that he could secure private counsel. The defendant stated that his family was prepared to hire private counsel but had not yet decided who to hire. Although the defendant has a right to counsel of choice, it is also well settled that the right has limitations. Specifically, if new counsel is not

identified and ready, willing, and able to enter an unconditional appearance, the denial of a motion to substitute counsel is not an abuse of discretion. *Id.* Here, the record demonstrates that the defendant had not identified substitute counsel and substitute counsel was not ready, willing, and able to enter an unconditional appearance at the time of the defendant's request for private counsel. Under these circumstances, the trial court did not abuse its discretion in denying the motion (*id.*), and the defendant has failed to make a substantial showing of a violation of his sixth amendment right to counsel of choice.

¶ 43                    D. Constitutionality of Habitual Criminal Act

¶ 44    The defendant's final contention on appeal is that the Habitual Criminal Act (Act) (730 ILCS 5/5-4.5-95(a) (West 2018)), the statute under which he was sentenced, is unconstitutional. The Habitual Criminal Act provides that every person who has been twice convicted of a Class X felony and is thereafter convicted of a third Class X felony shall be adjudged a habitual criminal and sentenced to a term of natural life imprisonment. *Id.* The defendant had two prior and separate convictions for armed robbery and was found guilty in this case. The trial court found that the defendant's previous convictions placed him within the purview of the Habitual Criminal Act and thus imposed a natural life sentence.

¶ 45    On appeal, the defendant argues that the Act is unconstitutional because it (1) mandates a life sentence without regard for the seriousness of the offense and denies him the opportunity to meaningfully present evidence in mitigation; (2) violates due process principles by creating a conclusive presumption that a defendant must receive a life sentence without regard to mitigating circumstances; (3) violates the separation of powers clause of the Illinois constitution (Ill. Const. 1970, art. II, § 1) because it takes the sentencing function away from the judiciary and delegates it

to the prosecutor; and (4) violates the eighth amendment prohibition against cruel and unusual punishment.

¶ 46    Each of these arguments was rejected by our supreme court in *People v. Dunigan*, 165 Ill. 2d 235 (1995). The *Dunigan* court held that the Habitual Criminal Act does not disregard the seriousness of the offense as it is only applicable to a defendant that has a "third serious felony conviction within a prescribed period of time." *Id.* at 246. Further, the defendant is not denied the opportunity to present mitigating evidence as he is allowed to do so when sentenced for the first two felony convictions and "[t]he [Habitual Criminal] Act may be invoked only after a defendant has twice demonstrated that conviction and imprisonment do not deter him from a life of crime." *Id.* Moreover, the court held that the "Act does not violate due process principles simply because it imposes a mandatory *sentence* upon defendants who have multiple serious felony convictions." (Emphasis in original). *Id.* at 247. In rejecting the argument that the Act violated the separation of powers clause, the court held that "[t]he power to petition the court to impose a particular sanction is not the power to sentence. Under the Act, the power to impose sentence remains with the trial judge." *Id.* at 250. Finally, the court found that an eighth amendment challenge to the Act was foreclosed by the United States Supreme Court decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In that case, the Supreme Court "found that a severe sentence did not become cruel and unusual simply because it was mandatory in nature." *Dunigan*, 165 Ill. 2d at 248 (citing *Harmelin*, 501 U.S. at 994).

¶ 47                                    III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 49    Affirmed.